Alexander, &c., v. Humber.

---

CASE 73—PETITION ORDINARY—JANUARY 19.

## Alexander, &c., v. Humber.

APPEAL FROM OWEN CIRCUIT COURT.

| 86 | 565 |
| 127 | 746 |

| 86 | 565 |
| 130 | 769 |

| 86 | 565 |
| 137 | 817 |

1. JOINT TRESPASSERS—ASSESSMENT OF DAMAGES.—The act of February 14, 1839, allowing a joint or several assessment of damages in an action of trespass, is still in force, never having been repealed.

2. AFFIDAVITS OF JURORS TO EXPLAIN VERDICT.—If the affidavits of jurors are ever to be received to show that the verdict intended to be returned was, in fact, not returned, by reason of a mistake as to the effect of the language used, they should be received with the greatest caution, and the verdict not changed unless the mistake is clearly made out.

    In this action against joint-trespassers to recover damages, the verdict of the jury was: "We, the jury, find for plaintiff one thousand dollars jointly." A few hours after the verdict was returned, and after the matter had probably been discussed with the friends of the parties, the jury came before the judge, and, upon inquiry, almost every one of them said they intended to find five hundred dollars against each defendant, and the verdict returned was not their verdict. Subsequently their affidavits to this effect were filed in support of a motion for a new trial, which was overruled. *Held*— That even if the affidavits could properly be considered upon a motion for a new trial, this court does not feel authorized upon the record, as presented, to disturb the conclusion reached by the trial judge.

3. REVERSIBLE ERROR.—No error committed during a trial is available upon appeal unless it has been relied upon as a ground for a new trial.

4. NEGLIGENCE—EVIDENCE OF INTOXICATION.—In an action to recover damages for personal injuries caused by the defendants' negligent driving, evidence that the defendants were intoxicated was competent as bearing upon the question of negligence.

Alexander, &c., v. Humber.

5. MEASURE OF DAMAGES.—In such an action the plaintiff is entitled to be compensated, not only for the loss of time and actual necessary expenses growing out of the wrong, but for the physical and mental suffering, and any permanent injury that is reasonably certain to accrue from it, and which is the plain consequence of it.

6. NEGLIGENCE—INSTRUCTIONS.—The court properly refused an instruction from which the jury might have inferred that if, at the moment of the accident, it was beyond the power of the defendants to prevent the injury, that then they were not liable, although such a state of case had been brought about by their own neglect.

W. MONTFORT, MONTGOMERY, LINDSAY & BOTTS AND O'HARA & BRYAN FOR APPELLANTS.

1. The charge of "wrongfully, wantonly, willfully and negligently" causing injury, is not equivalent to a charge of "willful or gross neglect," and does not authorize a recovery of punitive damages. (10 Bush, 679, Lexington v. Lewis; 2 Bibb, 217, Langford v. Owsley; 9 Bush, 527, L. & P. Canal Co. v. Murphy; 10 Bush, 267, Jacob v. L. & N. R. R. Co.)

2. Affidavits of jurors may be received to show that by mistake the verdict returned and entered was not the verdict agreed upon. (3 J. J. M., 395, Johnson v. Davenport; 7 Ky. Law Rep., 685, Farnan v. Lexington Ice Co.)

3. It is a reversible error to permit counsel, in the presence of the jury, to state what rejected evidence would be. (81 Ky., 186, Flint v. Commonwealth.)

E. E. SETTLE AND THOMAS R. GORDON FOR APPELLEE.

1. When negligence and recklessness co-operate, the doctrine of contributory negligence does not apply. (Cooley on Torts, 674; Wharton on Negligence, 330, 820.)

2. The act of February 14, 1839, 3 Statute Laws of Ky., 572, authorizing the assessment of several and joint damages against joint wrongdoers, did not apply to a case of trespass when there was a single act. And, besides, being omitted from the General Statutes and the Code, it is repealed. (Hilliard on New Trials, 151, 248; 1 Bibb, 399, Heath v. Conway; 3 Monroe, 416, Doran v. Shaw; 3 Marshall, 394, Steele v. Logan; 13 Bush, 650, Lucas v. Cannon; 3 J. J. M., 396, Johnson v. Davenport.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee, Frances Humber, sued the appellants, J. W. Alexander and T. L. Martin, for "wrongfully,

wantonly, willfully and negligently" driving a buggy against and over her, when she was walking along a public road.

The verdict was: "We, the jury, find for plaintiff, one thousand dollars *jointly.*" Among other grounds presented for a new trial, is one to the effect that this was returned by mistake, and that the jury intended to sever the damages, and fix them at five hundred dollars against each of the appellants.

It appears that the verdict was handed in by the jury without question or objection by any one. Several hours thereafter, the trial judge stated in open court that he had been informed by one of the jury that it was not their verdict. Thereupon, and although they had been discharged as to this case several hours, he called them before him and examined them, nearly every one saying that they intended to find five hundred dollars against each defendant, and that it was not their verdict. Subsequently, their affidavits to the effect above indicated were filed in support of the motion for a new trial; but it was refused.

The act of February 14, 1839, allowed a joint or several assessment of damages in an action of trespass. (3 Loughborough, 572.) This was in derogation of the general rule of the common law. It was adopted because the conduct of one trespasser is often more wanton and aggravating than that of another. The Code of Practice contains no such provision. It says nothing upon the subject. The case of Buckles, &c., v. Lambert, 4 Met., 330, decided since its adoption, recognized the statute as then in force, and to this view we adhere. The jury, therefore, had the power to

sever the damages; and the question is now presented whether the lower court should upon the affidavits have set aside the verdict.

The affidavits of jurors can not be received to impeach their verdict for misbehavior in themselves or their fellow-jurors. (Allard v. Smith, 2 Met., 297.)

It is said, however, that this is not the purpose here; but to show that the real verdict was not returned by a mistake in the language used in writing it.

After a verdict has been returned in open court, it would open a wide door to trickery, corruption and fraud to grant a new trial upon the *ex parte* affidavits of individual jurors as to what the jury *intended* to do. Public policy requires a court to act with great caution in such a case. It was not proposed in this instance to show by them that there was *no* verdict; but that the one returned by them, and then read in their hearing without objection by them, was not true. After its rendition they probably mingled with the friends of the respective parties; the matter may have been discussed; and under such circumstances a court should be slow to set aside the verdict upon affidavits procured from the jurors by the losing party, and prepared probably by his attorney. If such affidavits are ever to be received, it should be with the greatest caution, and only in cases of mistake clearly made out, and free from all misconduct upon the part of the jurors. In this case they intended that the appellee should have a thousand dollars; and they doubtless supposed there would be contribution between the appellants so as to make each pay one-half of the judgment. Certainly they did not intend to use the word "severally" where

Alexander, &c., v. Humber.

they said "jointly," as then the verdict would have been for one thousand dollars against each of the appellants.

The facts were before the trial judge ; he knew the parties ; and conceding that the affidavits of the jurors were in this instance within the exception to the general rule, and, therefore, could properly be considered upon the motion for a new trial, yet we do not feel authorized upon the record as presented to disturb the conclusion reached by him.

Any errors, if there were any, in giving instructions, and in permitting the appellee's attorney to avow before the jury what rejected witnesses would prove, or the character of rejected testimony, can not be considered by this court, as they were not embraced in the grounds for a new trial. No error committed during a trial is available upon an appeal unless it has been relied upon in the grounds for a new trial. (Commonwealth, for use, &c., v. Williams, &c., 14 Bush, 297.) The repeal of the statute requiring an assignment of errors did not affect this rule ; and it will control, although objection may have been made and exception taken at the proper time. (McLain v. Dibble & Co., 13 Bush, 297.)

The ground upon which a new trial was asked by reason of the admission of alleged incompetent testimony is by its terms limited to evidence relating to permanent injury to the appellee. This must be regarded as a waiver of objection to any other testimony. The admission of evidence tending to show that the appellants were more or less intoxicated at the time the injury was inflicted is not, therefore, open to question. If it were, however, it was unquestionably competent.

The issue was whether the appellants were guilty of neglect. Intoxication ordinarily deprives one of the same power to exercise caution as when sober. It will hardly be claimed that if one were injured by neglect in the movement of a locomotive, it would not be competent to show that the engineer in charge of it was at the time intoxicated.

A new trial was asked, however, upon the ground that the lower court improperly admitted testimony tending to show a permanent injury to the appellee, and also erred in refusing instructions asked by the appellants; and these questions only remain to be considered.

The wrong complained of was not a continuing act, or of such a character that successive actions could be maintained for the results flowing from it. It was one act. The injured party had the right, therefore, to offer testimony as to, and to recover for, all injuries that were reasonably certain to result from the wrong. If limited to proving her pain, suffering and injury to the time of bringing her action, and not allowed to show its continuance up to and existence at the time of trial, then it would follow that she would have but a partial remedy. Still more so would this be true, if she were not allowed to show that permanent injury had resulted, or was reasonably certain to result, from the wrongful act. In such a case one is entitled to be compensated not only for loss of time and actual necessary expenses growing out of the wrong, but for the physical and mental suffering and any permanent injury that is reasonably certain to accrue from it, and which is the plain consequence of it. The wrong being from a single act,

the nature and extent of it in all its consequences may be considered. The injured party need not delay suit until all the consequences have been developed. He may recover for past and future suffering, and past and future deprivation of health, if they be the direct result of the injury. (Sedgwick on Damages, pages 92$n$, 120, 654$u$.)

Complaint is made that the instructions given to the jury were likely to confuse and mislead them; that they failed to properly define the different degrees of neglect; that they, in effect, authorized the finding of punitive damages for ordinary neglect, and in substance said that no contributory neglect whatever would prevent a recovery in this case. If they are, in fact, open to such objections, yet, for the reason already given, we cannot consider them.

Five of the nine instructions asked by the appellants were refused. The first and third of these had already in substance been given. While we cannot look to those given for the purpose of determining whether there must be a reversal, because the grounds for a new trial do not authorize it, yet we can do so to see whether those rejected had already been given.

The second instruction refused was calculated to mislead the jury. They might have understood from it that no recovery could be had for any result of the wrongful act, however certain to follow, which had not then become a fact.

The fourth instruction limited the right to recover compensatory damages to any that had accrued up to the bringing of the suit, and did not permit any recovery whatever for any mental suffering, and was in these respects objectionable.

The fifth one was likely to mislead the jury. From it they might have inferred that if, at the moment of the accident, it was beyond the power of the appellants to prevent the injury, that then they were not liable, although such a state of case had been brought about by their own neglect.

Perceiving no error authorizing a reversal of the judgment below, it is affirmed.