# Youtsey Bros. v. Darlington.

(Decided February 18, 1930.)

HUBBARD SCHWARTZ and H. O. WILLIAMS for appellants.

BENTON, YUNGBLUT, SCOTT & BENTON for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

Appellants brought this action against appellee, alleging in their petition that they had sold and delivered to McKinley Morris goods, wares, and merchandise of the value of $407.67, at the request of Dewey Darlington, in writing signed by him, and for which he agreed to pay no part of which had been paid except $81.78, leaving a balance due of $325.88, for which judgment was prayed against Darlington. He filed an answer denying that he agreed to pay the account. The case was submitted to a jury, who returned a verdict for the defendant, signed by eleven of the jurors. The next day the plaintiffs filed the affidavit of three of the eleven jurors stating that they agreed to find a verdict for the plaintiffs, and that by mistake the verdict was written for the defendant, and moved to correct the verdict. This was on Saturday. On the following Monday the plaintiffs filed the affidavits of the other eight jurors to the same effect, and also filed a motion for a new trial. The affidavits of the jurors showed that the verdict was written by the one juror

who did not agree with the other eleven, and that when they signed the verdict they understood it was a verdict for the plaintiffs. There being no contrary evidence, the court set the verdict aside and granted a new trial.

Appellants insist that the court should have corrected the verdict and should have entered it as corrected and given judgment as the jurors intended. But the jury had been discharged when the verdict was returned, and the court was without power to correct the verdict on a subsequent day. Romans v. McGinnis, 156 Ky. 205, 160 S. W. 928. But affidavits of jurors are admissible to show that the verdict as received and entered of record by reason of mistake does not embody the true finding of the jury. 38 Cyc. p. 1903; Alexander v. Humber, 86 Ky. 565, 6 S. W. 453, 9 Ky. Law Rep. 734. While the rule is that a new trial should not be granted on this ground, unless on clear evidence, the facts were sufficient here to grant the new trial. Otherwise there would be no way to correct a mistake of this kind.

The case was tried again. The jury found a unanimous verdict for the defendant. Appellants insist that the verdict is palpably against the evidence. The writing relied on by the plaintiffs was lost. Morris, the tenant, testified on the trial that Darlington gave him the order, which was signed by him; that he took it to appellants' store and presented it to one of the clerks, who took it to one of the bosses, and then came back and gave him the groceries and also gave him the order, with a slip showing the groceries he had bought. He says that after this Darlington was at the farm and told him the cows needed feed and to go up there and get the feed and have it charged on the bill. He said he lost the order, but it was in these words: "Let McKinley Morris have what merchandise he wants and I will see the bill is paid. M. Darlington." The clerk to whom the order was presented stated that he took the order to appellant C. H. Youtsey, who told him to let the man have the goods, and he sold the goods on the order. Youtsey testified that he knew Darlington well, and that the clerk presented the order to him, signed by Darlington, and he told the clerk to let Morris have the goods; that he knew Darlington's signature, as he traded with them regularly; that before this Darlington came into the store and told him that he was going to have a new tenant on his farm, a tobacco grower from Nicholasville, and asked

him if he would like to have his business; he answered, that depended on whether he was all right; Darlington said, "I will stand behind him, he is all right and I will send you a written order to that effect." Another clerk in the store testified that he saw the order and read it and handed it back to the first clerk. A. M. Thurner, who is cashier of the bank at Alexandria, said that he had a conversation with Darlington and said to him that Youtsey said he had given him an order, and Darlington answered that he had given him an order, but he did not think they would let him have so much stuff. Mrs. Morris testified that her husband told Darlington he had to have provisions for the family and he had nothing to go on, and that Darlington told him to go to Youtsey Bros. and get anything he wanted; that he had made arrangements with them to get the groceries and things. Her husband then said, "You write me an order, they don't know nothing about me." Darlington then wrote the order and gave it to her husband, and he took the order that afternoon to appellant.

On the other hand, Darlington testified that he did not make any of the statements testified to by the witnesses, and that he had never signed any order. While the rule is that the credibility of the witnesses is for the jury, the court will set aside a verdict where it is clearly against the evidence. In this case there were five witnesses testifying to the existence of the order, and the banker testified that Darlington admitted having given the order. Their testimony is confirmed by the fact that appellants knew nothing about the tenant. He had come from Nicholas county; he had a wife and five children, and was without means. Darlington knew that he had to buy somewhere in order to live, and it is unreasonable that appellants would have credited him to the amount of this account without some security. The loss of the paper is satisfactorily accounted for; the verdict is palpably against the evidence.

Judgment reversed, and cause remanded for a new trial.