## Hood v. Spitzlberger.

(Decided February 2, 1932.)

WILLIAM H. NEWELL for appellant.

L. J. DISKIN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Mrs. Clara V. Hood brought this suit against her brother, L. M. Spitzlberger, to recover the sum of $3,250 claimed to be due for work done as housekeeper and office help from February 1, 1927, to September 12, 1929, under an oral contract by which he agreed to pay her the sum of $25 per week. The defendant filed an answer and counterclaim denying the allegations of the petition, and pleading that the agreement was that plaintiff was to reside at his residence rent free, and that he was to pay plaintiff $25 per week for housekeeping, and providing meals, and that he had paid plaintiff $25 a week for each and every week, except $20 for the last week of her residence with defendant. By way of counterclaim, defendant pleaded that he had loaned plaintiff the sum of $100, no part of which had been paid, and there was still due him the sum of $80, for which he asked judgment. By instruction No. 1 the court told the jury, in substance, that if the contract was as claimed by plaintiff, they should find for the plaintiff for such services rendered, if any, at the rate of $25 per week not exceeding in all the sum of $3,250, the balance claimed in the petition. Instruction No. 2 was the converse of instruction No. 1. By instruction No. 3 the jury was told to find for the defendant the sum of $80 upon his counterclaim, and, if the jury found for plaintiff under instruction No. 1 in an amount more than $80, they should deduct that sum from the amount so found for plaintiff and find a verdict in her favor for the difference. The jury returned the following verdict: "We the jury render a verdict in favor of the defendant in Instruction Nos. 2 and 3." Thereupon it was adjudged that plaintiff take nothing by her petition, and that defendant recover his costs. From that judgment this appeal is prosecuted.

Mrs. Hood testified that her brother told her that he would give her $25 a week salary, and $25 a week to keep the table. Her daughter-in-law, who claimed to have been present when the contract was made, testified that Dr. Spitzlberger told plaintiff to sell the farm, come and keep house for him, and that he would pay her $25 a week salary, and also money to run the house on. He did not say how much he would give her to run the house on. On the other hand, Dr. Spitzlberger testified as follows:

"I said, 'you understand I have been paying the other housekeeper $10.00 a week and paying for the

amount of table food that was necessary,' and I said to her, 'How much did it run about,' and she said, 'around $14.00 a little over,' I said 'we will make it $15.00 and $10.00 a week as your pay,' which was perfectly agreeable.''

In addition to this, Mrs. Anna Schwartz and Mrs. Tillie Gasten, appellant's sisters, and Frank Spitzlberger, appellant's brother, testified, in substance, that appellant told them that she was to get $25 a week, and out of that she was to take care of the table. In view of the conflict in the evidence, there can be no doubt that the question, whether the contract was as claimed by appellant, or as claimed by appellee, was for the jury.

It is insisted that the court erred in permitting evidence to the effect that appellant was a frequent attendant at the races. It is argued that, inasmuch as the only issue was as to the terms of the contract, and there was no claim that the services had not been performed, the evidence complained of had no place in the case. For the purpose of supporting her version of the contract, appellant laid particular stress on the numerous and onerous duties which she was required to perform, and to counteract this evidence it not only was proper to ask her if she did not attend the spring, summer, and fall race meetings at Latonia six days in every week, but in contradiction of her denial to show by other witnesses that such was the case.

The further point is made that the verdict was too indefinite to support the judgment. The verdict was in favor of defendant ''in instructions Nos. 2 and 3.'' These instructions are the only ones under which the jury could find for the defendant, and it is at once apparent that the word ''in'' was used in place of ''under'' and can be given no other meaning. In the circumstances there is no room for doubt as to what the jury meant, and no basis for the insistence that the verdict is indefinite.

There is the further insistence that the court should have granted a new trial on the ground that the verdict was the result of a mistake on the part of the jury. In support of this ground appellant filed the affidavits of four jurors who stated that they had the mistaken impression that they could not bring in a verdict for the plaintiff except for the full amount of the claim for $3,250, and that a majority of the jury wanted to bring

in a verdict for the plaintiff for a sum less than that amount, but with the understanding they had in the jury room they brought in the verdict they did. While the affidavits of jurors cannot be received to impeach their verdict for misbehaviour on the part of themselves, or their fellow jurors, Allard v. Smith, 2 Metc. 297, we have held that such affidavits are admissible to show that the verdict as received and entered of record by reason of mistake did not embody the true finding of the jury. Youtsey Bros. v. Darlington, 233 Ky. 112, 25 S. W. (2d) 44. In so ruling, however, we have made it clear that such affidavit, if received at all, should be received with the greatest caution, and only in cases of mistake clearly made out and free from all misconduct on the part of the jurors. Alexander v. Humber, 86 Ky. 565, 6 S. W. 453, 9 Ky. Law Rep. 734. This is not a case where it is claimed that, by reason of mistake in writing out the verdict, it did not conform to the verdict actually found. The only mistake claimed is that, at the time the jurors returned their verdict, they had the mistaken impression that they could not bring a verdict for plaintiff except for the full amount of $3,250, and that a majority of them wanted to bring in a verdict for a less amount, but with the understanding they had in the jury room they returned a verdict finding for the defendant. Were we to adopt the rule that new trials could be granted on affidavits of the jurors concerning their impressions as to what they could or could not do, it would open wide the door to trickery, corruption, and fraud, and no verdict would be secure. Alexander v. Humber, supra. We are therefore constrained to the view that the mistake relied on is not the kind of mistake for which a new trial will be granted on the affidavits of the jurors.

As there was no judgment over on the $100 counterclaim, appellant is not in a position to complain as to that item.

Judgment affirmed.