**CITY TAXI SERVICE, Inc., Appellant,**

v.

**John GIPSON, an Infant, etc., et al.,
Appellees.**

Court of Appeals of Kentucky.

Feb. 24, 1956.

Rehearing Denied May 11, 1956.

Mayer, Cooper & Kiel, Ben T. Cooper, Louisville, for appellant.

Benjamin Mazin, Edwin A. Rausch, Louisville, for appellees.

CAMMACK, Judge.

The City Taxi Service (hereinafter referred to as City Taxi) is seeking a reversal of two judgments rendered against it in favor of passengers who suffered injuries when the taxi in which they were riding was involved in an intersection collision with another car, in Louisville. The action was instituted by John Gipson, an infant, a passenger in the cab, against the City Taxi and James Beasley, driver of the car with which the cab collided. Another passenger in the cab, James Eyl, also an infant, intervened and was made a party plaintiff. A separate suit was brought by James Ratcliffe, a passenger in Beasley's car, against City Taxi and Thomas Woods; driver of the cab. Beasley was not made a defendant in that action. Before trial, Ratcliffe was killed in an unrelated acci-

dent, and his suit was revived in the name of his administratrix, Viola Rawls.

The two actions were tried together and resulted in a verdict of $750 for Gipson, $5,857 for Eyl, and $375 for Ratcliffe's administratrix. The appeal is from the judgment for Eyl, against City Taxi and Beasley, jointly and severally. A motion for an appeal has been made to review Gipson's judgment. That case is considered in City Taxi Service, Inc., v. Gipson, Ky., 289 S.W.2d 726. Beasley did not appeal from either judgment.

City Taxi urges a reversal on the grounds that (1) the evidence was not sufficient to sustain a verdict against it, and (2) the verdict, as recorded, does not represent the real intention of the jury. The first ground is without merit because both Beasley and Ratcliffe (by deposition taken prior to his death) testified that the traffic light was in favor of Beasley as his car entered the intersection. While other witnesses testified that the light favored the cab, there was conflict in the evidence; hence the question was one for the jury. City Taxi contends that, since Beasley and Ratcliffe were both interested witnesses, their testimony can not support the verdict; but it is axiomatic that a witness' interest in the outcome of a suit is a matter relating only to his credibility, and that question is a matter for the jury to determine.

In support of its second contention, City Taxi has filed affidavits of the jurors stating that the verdict, as recorded, embodies a mistake and the judgment entered thereon does not reflect the actual intention of the jury. This matter was presented first to the trial judge in a motion for a new trial, and the affidavits were presented at that time. No objection was made at the trial, when the judgment was entered or when the verdict was returned, although at that time the alleged "mistake" was apparent from the record.

The verdict stated in two different places that the jury was finding for the plaintiffs "under item No. 6 of the 'Instructions of

the Court' ". That instruction directed that if both the cab driver and Beasley were negligent and their negligence concurred to cause the accident, then a verdict should be entered against both of them. The last reference in the verdict to Instruction 6 recited the jury agreed that under it, "James Beasley contributed 40% of the negligence which caused the collision and that Thomas H. Woods (driver of the City Cab) contributed 60% of such negligence above referred to". The affidavits of the jurors recited that the last mentioned reference to Instruction 6 should have been to Instruction 7, which permitted the jury to find against both defendants "in a single sum, or in separate sums." The jurors stated that they intended to hold City Taxi liable for only 60 per cent of the verdict, and Beasley for the remaining 40 per cent. The trial judge, however, accepted the references to Instruction 6 as controlling, and entered judgment against both defendants for the entire sum, both individually and jointly.

The trial judge overruled the appellant's motion to file the affidavits of the jurors, but ordered that they be made a part of the record for purposes of appeal. Then, he overruled the motion for a new trial. We think his action was a ruling that a new trial should not have been granted on the basis of the affidavits, or on any of the other grounds alleged. Hence, we must decide whether or not the trial judge acted erroneously in this respect.

Previously, this Court has recognized that the affidavits of jurors are admissible to show a mistake in a verdict which had the effect of misrepresenting the jury's intention and finding. Youtsey Bros. v. Darlington, 233 Ky. 112, 25 S.W. 2d 44; Hood v. Spitzlberger, 242 Ky. 291, 46 S.W.2d 102. However, in the Hood case it was stated specifically that such affidavits, if considered at all, should be received with the utmost caution; and only in cases of mistake clearly made out, and free from all misconduct on the part of the jurors. Hence, the exception to the general rule that jurors are not to be subjected to post-judgment examinations concerning their verdict is very narrow and construed quite strictly.

In Alexander v. Humber, 86 Ky. 565, 6 S.W. 453, 454, 9 Ky.Law Rep. 734, a case cited as authority for the exception in the Youtsey opinion, the Court was concerned with essentially the same factual situation as is presented in the case under consideration, namely, an effort to obtain a new trial by producing jurors' affidavits that they intended to render verdicts in separate amounts against each of the joint tortfeasors, instead of a joint verdict upon which the court had entered judgment. Therein it was stated that:

"* * * After a verdict has been returned in open court, it would open a wide door to trickery, corruption, and fraud to grant a new trial upon the *ex parte* affidavits of individual jurors as to what the jury *intended* to do. * * * It was not proposed in this instance to show by them that there was *no* verdict; but that the one returned by them, and then read in their hearing without objection by them, was not true. After its rendition they probably mingled with the friends of the respective parties. The matter may have been discussed; and, under such circumstances, a court should be slow to set aside the verdict upon affidavits procured from the jurors by the losing party, and prepared probably by his attorney."

The Court then concluded that the ruling of the trial judge should not be disturbed, on the record, since the facts were before him and he knew the parties involved. Thus, the Court recognized a broad discretion in the trial judge based upon his peculiar knowledge of the relevant circumstances. We think the ruling in the case before us was within the bounds of the discretion of the trial judge.

Still another compelling reason exists for upholding the judge's ruling. It has been noted that the alleged mistake was apparent on the face of the verdict,

as written. This fact made the verdict susceptible of two different interpretations. In this vital respect, the case is distinguished from the Youtsey case. In Romans v. McGinnis, 156 Ky. 205, 160 S.W. 928, this Court held that under such circumstances it was the duty of the party objecting to the verdict to enter a motion *at the time the verdict is returned* to require the jury to make its verdict more definite, and not wait until it could be learned from one or more of the jurors, most likely in private, what was meant by the verdict. In the case at bar, City Taxi should have asked for a clarified, or more specific, verdict at the time it was returned because at that time the mistake was apparent. Under these circumstances, we conclude that the trial judge properly overruled the motion for a new trial.

Judgment affirmed.