480 P.2d 385

**William A. FITZGERALD and Margaret A. Fitzgerald, husband and wife, Appellants and Cross-Appellees,**

v.

**MARICOPA COUNTY, a body politic, Appellee and Cross-Appellant,**

**Maricopa County Municipal Water Conservation District No. 1, a body politic, the J. G. Boswell Company, the Del E. Webb Development Company, Appellees.**

No. 1 CA–CIV 1024.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 11, 1971.

Rehearing Denied March 19, 1971.

Review Denied April 13, 1971.

---

Langerman, Begam & Lewis, P. A. by Frank Lewis, Phoenix, for appellants and cross-appellees.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by John H. Westover, Phoenix, for appellee and cross-appellant.

Moore, Romley, Kaplan, Robbins & Green by Kenneth J. Sherk, Phoenix, for appellees Maricopa County Municipal Water Conservation Dist. No. 1, and Del E. Webb Development Co.

Snell & Wilmer by Roger W. Perry, Phoenix, for appellee J. G. Boswell Co.

JACOBSON, Judge.

This is an appeal from a judgment entered on a jury's verdict in favor of defendant Maricopa County and the entry of directed verdicts in favor of the other defendants. The primary questions for review concern the giving of a contributory negligence instruction, the failure to instruct on gross or wanton negligence and the failure to instruct on intervening cause. Considering first the jury verdict in favor of Maricopa County and taking the evidence in a light most favorable to sustain that verdict, it appears that sometime between the evening of February 3, 1965, and the early morning of February 4, 1965, the automobile in which appellant-plaintiff, William Fitzgerald was a passenger plunged into the Beardsley canal at the place where Waddell Road T-intersects with the access road running parallel to the canal. The driver of the vehicle, one Hough was killed.

Evidence was introduced which showed that Hough's death occurred immediately after the crash. Based upon body temperature the time of death was placed at shortly before 7:45 a. m. on February 4, 1965. Fitzgerald, who had been asleep in the rear of the car, was seriously injured.

Plaintiffs' theory of liability was based upon the alleged failure of the defendants to place any warning signs at the point where Waddell Road terminates at the edge of the canal, advising motorists of the end of the road.

The Beardsley Canal and the service road running parallel thereto were constructed, owned and maintained by the Maricopa County Municipal Water Conservation District No. 1. Waddell Road is a dirt road for about 2 miles east of

the canal and, although never declared or dedicated as a County Highway, was voluntarily graded by the county. In addition, sometime in the mid 1950's following a conversation between the Chief Executive Engineer of the Maricopa County Municipal Water Conservation District No. 1, and a county safety engineer, Maricopa County voluntarily undertook the job of erecting and maintaining warning signs at the east-west road intersections with Beardsley Canal. The roadway for at least 600 feet east of the canal is entirely on property which is held in trust by Arizona Title & Trust Company for the benefit of defendants J. G. Boswell & Company and Del E. Webb Development Company.

The procedure followed in the maintenance of signs in this area was for one two-man sign crew (which was responsible for sign maintenance from the Black Canyon Highway to the west end of the County) working at their own schedule, to square off an area and work up and down the roadways of the laterals and then east and west on the roads, replacing or repairing signs as needed, then moving on to another square. There was evidence to indicate that the last time the sign crew worked at the accident site was October 4, 1964, 5 months prior to the accident.

The evidence showed that Hough and Fitzgerald had attended a birthday party at a neighbor's house on the evening of February 3, 1965, Fitzgerald leaving home at approximately 7 P.M. Fitzgerald testified that Hough consumed at least one beer at the party. During the course of the evening a trip was made to the NCO Club at Luke Air Force Base for the purpose of obtaining more beer. While there Fitzgerald saw Hough with a glass of beer in his hand. In addition Hough also drank at least two straight shots of whiskey.

After Hough and Fitzgerald returned to the party a fight developed between a Pete Rainwater and other guests. At ap-

proximately 11 P.M., Hough offered to drive Rainwater home and Fitzgerald got in the car for the purpose of directing Hough to Rainwater's house. The route to Rainwater's home from the party is approximately five miles on a paved road and involves several turns. After dropping Rainwater at his home, Hough and Fitzgerald drove off, ostensibly to return to the party. Fitzgerald was dozing in the back seat and remembers nothing except the fact that just prior to the accident Hough was driving on a rough road. As previously indicated the jury could have found the accident did not occur until approximately 7:45 A.M. the following morning. The route from Rainwater's home to the scene of the accident is on a direct line along Waddell Road for approximately nine miles including approximately two miles of dirt road.

A qualified chemist testified as to the results of a blood alcohol test run on blood gathered from the open wound in the chest of Hough, which test showed that Hough's blood alcohol level was .16% and that this test was substantially accurate. Another expert testified that all drivers with a blood alcohol level in excess of .08% were impaired in their driving abilities.

The County's final expert testified that the vehicle was traveling at a speed of 70 miles per hour when it left the roadway and flew 50 feet through the air and into the canal bank opposite the lateral access road. The Court directed verdicts in favor of all other defendants and the case was submitted to the jury as to the liability of the County alone.

Appellant Fitzgerald lists 7 questions for review which may be classified under 3 major assignments of error:

I. Alleged error in the Court's instructions.

(a) Should the instruction on contributory negligence have been given?

(b) Should an instruction on gross or wanton negligence have been given?

(c) Should an instruction on intervening cause have been given?

II. Alleged error in the Admission and Rejection of Evidence.

(a) Should the court have admitted proof concerning missing warning signs?

(b) Should the court have rejected the blood alcohol test results?

III. Alleged error in the direction of verdicts to all other defendants.

We shall discuss each question in the order outlined above.

## THE COURT'S INSTRUCTIONS

Appellant first contends there was no evidence to support the giving of a contributory negligence instruction. If there was any evidence from which the plaintiff's contributory negligence might be inferred, the issue was correctly submitted to the jury. Prophet v. S. H. Kress Co., 106 Ariz. 504, 479 P.2d 167 (1970); MacDonald v. Eichenauer, 77 Ariz. 252, 269 P.2d 1057 (1954); Zakroff v. May, 8 Ariz.App. 101, 443 P.2d 916 (1968). The type of contributory negligence alleged to be present in this case is usually defined in terms of assumption of risk as was stated in the *MacDonald* case:

"Here plaintiff placed himself in a position of danger wherein he should have foreseen that a particular harm, to wit, bodily injuries inflicted by movement of the farm machinery, might be the end result of his act. The force which caused the movement of the machinery might come from one or more of a number of sources or be set off by varying circumstances not foreseeable in all their detail. However, this does not excuse the plaintiff's fault in voluntarily undertaking a known risk of harm which a reasonably prudent person

would not have undertaken in the same circumstances, *which caused or contributed to his injuries.* In this connection it is also urged that plaintiff did not cause or contribute to his own injuries except in the sense that he furnished himself as the victim of defendant's negligence. However, *we think the causal requirement is satisfied by plaintiff's voluntarily subjecting himself to an unreasonable risk of harm, and there is a sufficient nexus between his acts and the injury suffered for reasonable men to impute fault or responsibility therefor to him, and this is all the law requires.*" [emphasis added.] 77 Ariz. at 255, 269 P.2d at 1059.

■ Here, there was direct evidence that Fitzgerald observed the driver Hough consume at least two beers. They were both at a party where alcoholic beverages were being consumed; they were both together during the entire evening; and Hough's blood showed excessive alcohol content. From this and the circumstances surrounding the accident, we believe there was sufficient evidence to submit to the jury the question of whether Fitzgerald was contributorily negligent in placing himself in an automobile driven by Hough. As was stated in Davis v. Waters, 103 Ariz. 87, 436 P.2d 906 (1968) under similar facts:

"We believe there is sufficient evidence in the record to create a question of fact for the jury as to whether the defendant was intoxicated to such an extent that the risk of being a guest in her car was an obvious danger. It would then be the jury's prerogative to decide whether to believe the plaintiff's disavowal of any knowledge of the risk. [citations omitted]. Consequently the trial court did not commit error when it granted an instruction on assumption of the risk." 103 Ariz. at 90, 436 P.2d at 909.

Appellant next contends that it was error to refuse to instruct the jury on gross or wanton negligence. This contention calls for a review of the record to determine whether sufficient evidence existed to justify such an instruction. Such evidence must be more than slight and inconclusive. Newman v. Piazza, 6 Ariz. App. 396, 433 P.2d 47 (1967).

The evidence proffered by appellant and contradicted by the County consisted primarily of the testimony of three witnesses. Richard Chavez, Traffic Safety Supervisor for the County Highway Department testified on cross-examination that "you would have to get up on top of the service road before you could see the canal." Deputy Sheriff Harris testified that he did not recall seeing signs at Waddell Road and the canal for years prior to the accident. Jim Jenkins, a county Park Ranger, similarly testified.

On the other hand, numerous witnesses testified for the County to the effect that warning signs were maintained at the accident site. It was uncontradicted that a "dead end" sign existed some 700 feet from the canal on Waddell Road. Two witnesses testified that they saw one red reflectorized sign lying about three feet down inside the bank of the canal on the day of the accident.

■ Based upon this evidence the trial judge was faced with the decision of whether substantial evidence existed from which a jury could conclude that the county's conduct in maintaining signs in the area was grossly and wantonly negligent. These terms are defined in Nichols v. Baker, 101 Ariz. 151, 416 P.2d 584 (1966):

"A person is wantonly negligent if he wilfully does an act or fails to do an act which it is his duty to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the plaintiff but also involves a high degree of probability that substantial harm will result. Wantonness implies a reckless

indifference to the results of an act." [Citations omitted.] 101 Ariz. at 153, 416 P.2d at 586.

In view of the character of this road (dirt for two miles), the existence of a "dead end" warning sign 700 feet on the road from the canal bank, the testimony that warning reflector signs had been placed on the canal bank approximately five months prior to the accident, and the undisputed testimony that these reflector signs frequently fell victim to the acts of vandals, we hold that no substantial evidence existed suggesting that the County acted with reckless disregard for the consequences of its acts which would justify a gross or wanton negligence instruction.

■ Appellant's next contention concerns the trial judge's refusal to instruct the jury that the acts of vandals in removing the warning signs were not a superseding cause relieving the defendant from liability. Appellants argue that such an instruction was necessary because the proximate cause instruction utilized by the Court introduced the concept of an "efficient intervening cause" within its definition. This particular definition of proximate cause has been repeatedly approved by the Arizona Supreme Court. *See* Zelman v. Stauder 11 Ariz.App. 547, 466 P.2d 766 (1970) and cases cited therein. Moreover, the doctrine of superseding causes was not an issue in this action. The liability of the County was adequately covered by the instructions. We find no error in refusing to instruct on an issue which is not involved in the litigation.

## ALLEGED ERROR IN THE ADMISSION AND REJECTION OF EVIDENCE

Appellant urges that the trial court committed error in the rejection of offered evidence to show a specific number of signs were erected along the Beardsley Canal *subsequent* to the accident in question. Four theories are propounded upon which appellant contends such evidence should have been admitted: (1) negligence by de-

fendant county, (2) control of defendant county in signing the roadway, (3) impeachment of witnesses, and (4) to establish that no signs were up at the intersection at the time of the accident.

■ As to the first contention, our Supreme Court has followed the generally accepted rule that evidence of repairs or alterations or of precautions taken following an accident is inadmissible to prove negligence or as an admission of negligence. Slow Development Co. v. Coulter, 88 Ariz. 122, 353 P.2d 890 (1960). The second theory was simply not in contest. The third theory, impeachment, is inappropriate for the reason that the County did not contend that the signs along the canal would never need replacing; and the fourth theory was independently satisfied by the testimony of at least two witnesses to the effect that no signs were apparent to them on the day of the accident.

■ Appellant also challenges the trial court's ruling in admitting into evidence the results of a blood alcohol test conducted on the body of the deceased driver. As appellant makes clear in his reply brief, the only question here involved concerns Mr. Cutter's qualifications to express an opinion on the relationship between post-mortem and pre-mortem blood alcohol content, appellant having admitted Mr. Cutter's qualifications to perform analyses of blood alcohol.

The witness had in the past conducted numerous experiments with blood taken from deceased individuals and tested for periods of time ranging from immediately after death to ten days after death to determine if there was a significant change in blood alcohol content following death. In the instant case, following his original blood alcohol test on February 5, 1965, Mr. Cutter ran the same test twice again four days later. The second analysis resulted in a blood alcohol content of .166% and the third .161%. Based upon these tests as well as his prior experience, Mr. Cutter testified that in his opinion there was no significant difference in the blood

alcohol content at the time the test was taken and the blood alcohol content at the time of Hough's death.

Our Supreme Court, in Board of Regents of University, etc. v. Cannon, 86 Ariz. 176, 342 P.2d 207 (1959) discussed the qualifications and admissibility of the testimony of an expert witness as follows:

> "He is defined as a person who is so qualified, either by actual experience or by careful study, as to enable him to form a definite opinion of his own respecting any division of science, branch of art, or department of trade about which persons having no particular training or special study are incapable of forming accurate opinions or of deducing correct conclusions. 20 Am.Jur., Evidence, Sec. 783. Medical doctors, engineers, artists and other similar professional persons might properly be designated as 'expert witnesses' when testifying directly in their field. Lay persons who have some special knowledge in a special field may also give opinion evidence which is frequently referred to as 'expert testimony.' The question of whether any witness, whether or not designated 'expert' is competent to testify on a given subject rests in the sound discretion of the trial court, and its exercise will not be reviewed but for abuse." [Citations omitted.] 86 Ariz. at 178, 342 P.2d at 209.

We can find no abuse of discretion on the part of the trial judge in admitting the testimony of this witness into evidence. Whatever the witness lacked in the way of formal medical education was a matter of weight to be accorded his testimony by the jury. City of Phoenix v. Brown, 88 Ariz. 60, 352 P.2d 754 (1960). M. Udall, Arizona Law of Evidence § 23 (Pocket Part 1971).

Having found the verdict in favor of Maricopa County free of error, we need not discuss Maricopa County's contention on cross-appeal that it was entitled to a directed verdict.

## ALLEGED ERROR IN THE DIREC- TION OF VERDICTS

Appellant lastly cites as error the direction of verdicts in favor of appellees: Maricopa County Municipal Water Conservation District No. 1, Del E. Webb Development Company and J. G. Boswell Co.

■ The threshold question regarding an inquiry into the possible liability of these defendants involves an examination into whether a duty existed on the part of any one of them to warn of the possible danger involved in the existence of the open and unguarded canal. As to the liability of the Maricopa County Municipal Water Conservation District No. 1, it appears that Beardsley Canal was constructed in 1927, at which time Waddell Road was not even in existence—not becoming a graded road until the 1950's. Under these circumstances we feel the liability of the Water District is controlled by Restatement (Second) of Torts § 368, comment C. (1965):

> "c. *When highway built near evcavation.* If a highway is established in close contiguity to an excavation or other dangerous artificial condition upon the possessor's land, whether constructed by him or otherwise created, the duty to guard such dangerous condition is upon those who are charged with the duty of maintaining the highway in a reasonably safe condition for travel and not upon the possessor of land upon which the dangerous condition is situate."

*See,* City of Ft. Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954 (1945). Moreover, the Water District's liability is limited by those principles of public policy most recently enumerated in Hersey v. Salt River Valley Water Users' Assn., 10 Ariz.App. 321, 458 P.2d 525 (1969).

■ As to the liability of Del Webb & J. G. Boswell Co., it appears that the land lying immediately to the east of Beardsley Canal and through which the dirt portion of Waddell Road runs was owned prior to

1957 by J. G. Boswell Co. In 1957, Boswell sold by means of subdivision trust to Del Webb who thereby acquired a second beneficial interest in the property. Del Webb leased the property back to Boswell who in turn subleased to Del Pete Venture, which was the sublessee of the property at the time of the accident. Del Pete Venture was not a party to this action. As to both Boswell and Del Webb, the general rule seems to be that a lessor of land is not liable to third persons on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession. Restatement (Second) of Torts § 356. W. Prosser, The Law of Torts, § 63 at 412–13 (3rd Ed.1964). We find that neither Boswell nor Webb owed a duty to plaintiff in this action. The directed verdicts in their favor were properly granted.

The judgment of the trial court is affirmed.

EUBANK and HAIRE, JJ., concur.