## Commonwealth v. Yingling

*Gary E. Hartman, assistant district attorney*, for the Commonwealth.

*David K. James III*, for defendant.

SPICER, *P.J.*, January 31, 1986 — Defendant was involved in an accident at approximately 10:30 p.m. on April 19, 1985, which resulted in the death of Scott Kennedy. He was charged with two counts of driving under the influence, 75 Pa.C.S. §3731; homicide by vehicle while driving under the influence, 75 Pa.C.S. §3735; and involuntary manslaughter, 18 Pa.C.S. §2504. A jury found him guilty of all charges and post-verdict motions followed. He is subject to a mandatory sentence of at least three years under section 3735.

Facts established at trial are as follows: Prior to the accident, defendant, decedent, and William Kennedy, spent about two and one-half hours in Hanover at the Carlisle Street Tavern. Defendant drank both beer and mixed drinks and ate nothing. He obtained his last drink, a mixed drink, about 10:00 p.m. and consumed it over approximately a 15 minute period. The three then left and, with de-

fendant driving, drove around Hanover for another 15 minutes. They then proceeded north on Pennsylvania Highway Route 94.

Weather conditions were good and the roadway was dry. Traffic was light. After entering Adams County, defendant attempted to pass another northbound vehicle, operated by Sheri Becker. Ms. Becker described defendant's speed as very fast and the roadway as straight. Defendant lost control of his vehicle and collided with a utility pole. Scott Kennedy was killed.

The main thrust of defendant's post-verdict motions is that the court improperly allowed Dr. Lewis Shaw to relate blood test results back to the time of the accident.

Dr. Shaw is a graduate of Bucknell University and Pennsylvania State University School of Medicine. He is in his third and last year of residency in emergency medicine at Hershey Medical Center. He was the physician on duty at the Hanover Hospital emergency room when defendant and decedent were brought in. He testified that it is important, medically speaking, to know whether a patient is under the influence so that symptoms can be properly interpreted. He testified that absorption rates of alcohol are subject to variables but that once in the blood, alcohol is metabolized at a constant rate.

There was some small discrepancy, as in most cases, with the fixing of times.

William Kennedy set the time of accident at around 10:30 p.m. Sheri Becker and Howard Gearhart, fireman, who arrived at the scene, said only that it was after 10:00 p.m. when Mary Chmil, the medical technologist who drew and analyzed defendant's blood, said the blood was drawn some time between midnight and 1:15 a.m. The test results were .23 percent.

Defendant argues that Dr. Shaw was not competent to interpret the test results. The court cannot agree. Trial courts are given wide discretion in ruling on the competency of expert witnesses. Jenkins, Pennsylvania Trial Evidence Handbook §7:13. One commentator has said:

"The chief question that occurs here is whether a *general practitioner* may testify on matters of a particular department of the science wherein specialists may presumably be had. Here the courts seem not to have taken a sufficiently firm stand against the narrow objections frequently raised. It is not that the rulings themselves are illiberal, but that narrow doctrines are not repudiated with sufficient positiveness. The liberal doctrine should be insisted on that the law does not require the best possible kind of a witness, but only persons of such qualifications as the community daily and reasonably relies upon in seeking medical advice. Specialists are in many communities few and far between; the ordinary medical practitioner should be received on all matters as to which a regular medical training necessarily involves some general knowledge." Wigmore on Evidence, Chadbourn Revision (Little Brown & Company 1979) §569.

Defendant further argues that Dr. Shaw should not have been permitted to express an opinion, no matter how well qualified.

Dicta in several appellate cases supports this position. It all began with a dissent in Commonwealth v. Hartman, 179 Pa. Super. 134, 115 A.2d 820 (1955). At trial, an expert described many variables that could affect absorption rates. Because of this, Judge Ross expressed the view that relation back testimony was too speculative to be admissible. This dissent was cited with approval in Schwarzbach v. Dunn, 252 Pa. Super. 454, 381 A.2d 1295 (1977).

Schwarzbach, in turn, has been cited with approval by Couts v. Ghion, 281 Pa. Super. 135, 421 A.2d 1184 (1980) and Commonwealth v. Griscavage, 336 Pa. Super. 141, 485 A.2d 470 (1984). In footnote 5 in this last opinion, the Superior Court partly repeated the views expressed in civil cases that "Attempts to relate back alcohol/blood levels to a time prior to the admission of the test are regarded with skepticism."[1]

Despite the dicta, no court has held relation back opinions to be per se inadmissible despite language such as "(test results, where test given three hours after accident, may not be extrapolated by expert who will testify as to probable blood alcohol level at time of accident)." Ackerman v. Delcomico, 336 Pa. Super. 569, 576, 486 A.2d 410, 414 (1984). No attempt had been made to introduce such evidence in Griscavage and the Superior Court has taken pains, in other cases, to declare that it is not deciding the admissibility of such evidence. See, e.g. "[w]ithout deciding whether such evidence is ever admissible, we note simply that it was properly excluded here, where the evidence was in the form of the opinion of a police officer whose qualifications to render such an opinion were not established at trial." Couts, supra, 421 A.2d at 1190.[2]

---

1. Actually, this is a mild version of the original statement because it deletes the explanation "because such a test is entirely too speculative." 381 A.2d at 1299.

2. Such testimony was apparently received without objection in Commonwealth v. Arizini, 277 Pa. Super. 27, 419 A.2d 643 (1980). We have been unable to discover any cases on point. A search of 77 A.L.R.2d 971 and 16 A.L.R.3d 748 reveals only two cases. In State v. Bessette, 130 Vt. 438, 296 A.2d 179 (1972), a doctor was allowed to state the time required for absorption of alcohol into the blood. In Fitzgerald v. Maricopa County, 14 Ariz. App. 48, 480 P.2d 385 (1971), a doctor was allowed to relate premortem and postmortem levels.

We do not think the Superior Court ever intended to make such testimony inadmissible but merely to signal a need for caution. That court referred to Scharzbach in Commonwealth v. Tylwalk, 258 Pa. Super. 506, 509, 393 A.2d 473, 475 (1978) footnote 5, and said "[i]t is important to note that a majority of this court did not embrace that rationale." Tylwalk was a full court decision (all others, except Schwarzbach, were panel decisions) and held that a four and one half hour delay in administering a test did not make the results inadmissible.

It makes no sense to hold that a jury can relate back test results but a doctor can't. Further, under section 3731(a)(4) such testimony may be required to prove the element of the offense. Courts no longer deal with test results solely as evidence of intoxication but as substantive elements of the crime of driving with a blood alcohol content of .10 percent or greater.

Even if we view Dr. Shaw's testimony with skepticism, we think it properly admitted. Dr. Shaw did not attempt to state what defendant's blood alcohol content was at the time of the accident. He said that it was medically impossible, even taking into account variables such as absorption rates, that the alcohol content was lower than .10 percent.

Defendant argues that the evidence was insufficient to sustain the verdict. Even without Dr. Shaw's testimony, it was sufficient. The jury could have properly found the defendant to have been under the influence based on testimony of his drinking coupled with the accident occurring as it did. Commonwealth v. Cave, 219 Pa. Super. 512, 281 A.2d 733 (1971).

The attached order shall be entered.

## ORDER OF COURT

And now, this January 31, 1986, defendant's post-verdict motions are overruled. He is directed to report to the Probation Office to arrange a CRN report. The Probation Office is directed to perform a presentence investigation and to provide the Court with a report. Sentencing is scheduled for March 11, 1986, at 9:00 a.m. at which time defendant is directed to appear.