Commonwealth *v.* Cave, Appellant.

Argued June 14, 1971. Before Wright, P. J., Watkins, Montgomery, Jacobs, Hoffman, Spaulding, and Cercone, JJ.

*Louis Sager,* with him *Lawrence Sager,* and *Sager & Sager Associates,* for appellant.

*Stewart J. Greenleaf,* Assistant District Attorney, with him *William T. Nicholas,* Executive Assistant District attorney, *Parker H. Wilson,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., September 21, 1971:

On September 9, 1967, at approximately 2:30 p.m. defendant Irvin F. Cave was operating his automobile at a high rate of speed on Swamp Pike in Montgomery County. His vehicle catapulted along the highway, passing two or three automobiles at one time, and crossing the solid yellow center line (no passing area) as he did so. As he sped along the road, he approached a curve which he was unable to negotiate properly, crossed the center line of the highway, and violently collided head-on with an automobile being driven in the opposite (northerly) direction by Leon S. Haraczka. Mrs. Haraczka, a passenger in her husband's automobile, was killed instantly. Defendant was charged with involuntary manslaughter and upon trial was found guilty by a jury. He filed motions for a new trial and in arrest of judgment which were refused by the court below. This appeal followed.

Defendant claims it was error for the trial judge to have permitted Trooper Yoblomski to testify that defendant, during an interview, had disclosed that somewhere around 2:00 p.m. on the day of the fatal accident he was at the Fruitville Inn Bar on Swamp Pike where he had imbibed "a couple of beers", then got into his automobile and headed south on Swamp Pike toward Limerick.

It is the defendant's contention that the admission of this testimony was prejudicial error, being in violation of the rule set forth in *Fisher v. Dye,* 386 Pa. 141 (1956) that "the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably establishes a degree of intoxication which proves unfitness to drive: *Critzer v. Donovan,* 289 Pa. 381, 384, 385, 137 A. 665, 666; *Landy v. Rosenstein,* 325 Pa. 209, 216, 188 A. 855, 859; *Balla v. Sladek,* 381 Pa. 85, 93, 112 A. 2d 156, 160."

It is true that the "mere" drinking of intoxicating liquor is inadmissible to prove that a driver was under the influence of intoxicating liquor and unfit to drive an automobile. However, it is also true that if in addition to the drinking, facts are shown from which a conclusion reasonably follows that the driver was under the influence of intoxicating liquor, all the evidence, the drinking and the surrounding circumstances, are admissible for the consideration of the trier of facts to determine whether or not the drinking was wholly or partly the cause of an accident for which he is being held responsible.

In the case now before us the record discloses more than the fact that defendant drank "a couple of beers". It also establishes that immediately after drinking those beers he got into his car, traveled onto Swamp Pike, and proceeded thereon in a wild, reckless, and dangerous manner to the place of the fatal accident which occurred only one mile away from the Fruitville Inn. A clear description of the manner in which defendant operated his automobile immediately after leaving Fruitville Inn was established by three disinterested witnesses. One witness, Mrs. Slaybaugh, testified that she was operating her automobile on Swamp Pike in the same southerly direction as defendant at a speed of 55-56 miles per hour (the speed limit was 55 miles per hour) when she saw, in her rear view mirror, the defendant cross over the yellow line dividing the southerly and northerly lanes of travel, travel into the northerly lane of oncoming travel, and pass her vehicle and the two vehicles traveling in front of her. She approximated defendant's speed at about 65 miles per hour. When defendant passed the two vehicles in front of her, the yellow line dividing the two directions of traffic was a solid one and continued to be a solid line as it went around the curve where the collision with the northbound Haraczka vehicle occurred. Mrs. Slaybaugh did

not see the collision because defendant's automobile had passed beyond her view of the curve in the road.

Evidence of what occurred after defendant's vehicle went out of Mrs. Slaybaugh's line of vision was supplied by two other disinterested witnesses who were traveling in the northbound lane behind the Haraczka vehicle. Marvin L. Heimbach testified he was traveling directly behind Mr. Haraczka on this northbound lane, that he saw defendant's car "on the curve" crossing over the yellow line into the northbound lane, and that only a few seconds elapsed from the time he thus saw defendant's car to the time of the collision. This witness testified that immediately prior to the collision Mr. Haraczka had reduced his speed to about 5 miles per hour, attempting to steer his car to the right out of the defendant's collision course.

Another witness, John J. Hojecki, testified he was also traveling in the northbound lane behind Mr. Heimbach. Mr. Hojecki testified he saw defendant's car first "straddling" across the center line on the curve, with the left front and left back wheels in the northbound lane, while traveling in a southerly direction. He estimated defendant's speed: "I would say he was going over 70 miles an hour." He saw defendant's car only for a "fraction of a second" or a "second" for then it went completely over into the northbound lane of travel out of his line of vision which was blocked by the Heimbach and Haraczka vehicles in front of him. This witness stated: "Well, I know I didn't see him no more. And I know he was coming pretty fast. And I come around that bend quite often. And from that estimation, I know he was going that fast that he could not make that turn, not on his side of the road, anyway."

State Trooper Yoblomski testified: "The impact was determined to be in the northbound lane, in the right portion of the northbound lane near the berm . . . the vehicles could positively be traced to where they came

to rest after the accident by the scrape marks from the point of impact to their resting place."

Mr. Haraczka's testimony was that when he saw defendant come around the corner, "I told my wife he is going to hit us. And it was just that quick. I don't know just how far away it was, or nothing . . . As far as I can remember, he was still partly on the curve . . . on my side . . . He [defendant] was just flying, I don't know how fast."

The evidence of defendant's drinking, and his conduct after leaving Fruitville Inn as related by disinterested witnesses, were matters properly admitted into evidence by the trial judge for the jury's consideration. The trial judge properly instructed the jury on this evidence as follows:

"Another thing that I should say to you, the officer testified that the defendant said he had two or three beers, and the defendant, himself, said that he had two or three beers. The consumption of alcoholic beverages is legal in the Commonwealth of Pennsylvania. The mere fact that he had two or three beers would not constitute evidence that he was under the influence of an intoxicating beverage, which is unlawful in the Commonwealth of Pennsylvania. In other words, members of the jury, nobody testified that he was under the influence of intoxicating beverages. The mere fact that he had two or three beers would not be sufficient evidence that he was under the influence of intoxicating beverages. So you will not consider that as an element of the rash conduct and recklessness that I have referred to unless you find that there was some connection, from the evidence, between the consumption of alcoholic beverages and the factual situation that resulted at the time or immediately prior to the time that the accident occurred."

In *Critzer v. Donovan*, 289 Pa. 381 (1927), cited and relied on in *Fisher v. Dye,* supra, in the establish-

ment of the rule sought to be invoked by defendant in this case, the court reasoned as follows: "It may be conceded that, in an action wherein reckless or careless driving is the matter at issue, proof of intoxication would be relevant: Alexander v. Humber, 86 Ky. 565, 6 S.W. 453, 454. When evidence of intoxication appears in a case such as this it is offered . . . to show a circumstance from which recklessness or carelessness of the driver may be inferred. Care should then be taken as to the use of such evidence. There was no allegation or proof of intoxication, *nor was there any evidence of conduct or appearance from which a reasonable inference could be drawn that the man was intoxicated* . . . *Standing alone,* the odor of liquor does not prove, nor is it evidence of, intoxication; *joined with other facts it may become so:* Com. v. Eyler, 217 Pa. 512. Hence it was error for the trial court to admit the evidence as proof of intoxication.

"Since there was no evidence that Kane, the driver, was intoxicated, *was the testimony otherwise competent?* In view of the issues here raised we think it was not competent for any purpose. Proof of the odor of liquor is admissible for certain purposes, but its natural consequence is not reckless driving." (Emphasis supplied.)

Thus in the *Critzer* case the admission of evidence indicating the drinking of intoxicating liquor was declared error because it stood alone, without any other evidence of conduct or appearance to substantiate a finding of intoxication. In applying the *Critzer* reasoning to the facts of the instant case, although reckless driving is not a natural or ordinary consequence of the consumption of three beers and standing alone such drinking would not be proof of intoxication, yet joined with other facts of evidence in the case we conclude that the court was correct in submitting this evidence to the jury in order that it might determine whether or not

defendant's drinking contributed to the fatal accident. Defendant's mode of operation of his vehicle from the time he left the Fruitville Inn to the place of impact only one mile away was such that the jury could reasonably infer that the fatal collision was in fact a consequence of the recklessness caused by the defendant's drinking.

It was in this manner that this court in *Commonwealth v. Carnes,* 165 Pa. Superior Ct. 53 (1949) distinguished the *Critzer* case, saying (pp. 57-58) : "That case [Critzer] is clearly distinguishable on its facts from the circumstances revealed by this record. In an action, wherein reckless or careless driving is the matter at issue, proof of intoxication would be relevant. Where the manner of the operation of the car is at issue, proof of the consumption of intoxicating liquors by the operator to show he was deprived of that clarity of intellect and control which he would otherwise possess, is highly relevant, *particularly where other manifestations of the operation of the car 'under the influence of intoxicating liquor' may be inferred from the evidence.* Here there was an abundance of evidence from which defendant's reckless driving might be deduced excluding the testimony of the intoxicating drinks imbibed by him. Evidence that he had a few drinks preceding the accident was not necessarily offered to prove he was drunk or intoxicated. It does, however, aid, with other circumstances in showing the operation of the car 'under the influence of intoxicating liquor' is related to the recklessness and lack of control[1] in the operation of his vehicle and is a facet of the relevant evidence dealing

---

"[1] Defendant claims he lost consciousness and control of the car when sideswiped by an oncoming vehicle not observed by others at or near the scene."[1]

[1] In the case now before us defendant also claimed that he lost consciousness and had no recollection of the events leading to the collision.

with the more general subject, to wit, the criminal negligence of the defendant. His imbibing in any degree in these circumstances was relevant to establish and to explain reckless misconduct in the operation of his vehicle. Commonwealth v. Long, 131 Pa. Superior Ct. 28, 198 A. 474. Cf. 8 Blashfield, Cyclopedia of Automobile Law, §5475; 2 Wigmore, Evidence, §235." (Emphasis supplied.)

In *Commonwealth v. Long,* 131 Pa. Superior Ct. 28 (1938), it was not disputed that defendant "had been drinking intoxicating liquors during the evening or early morning prior to operating" the truck. However, several witnesses testified that defendant was not under the influence of intoxicating liquor before operating the truck. The court held that a finding as to whether or not defendant was driving under the influence of intoxicating beverages was not dependent on the testimony of those witnesses, because despite their testimony, "Manifestations of appellant's being 'under the influence of intoxicating liquor' while driving the truck could be found from the facts in evidence." The court stated (pp. 34, 35) : "In reaching a conclusion it was proper for the jury to consider the course which the truck followed on the highway, and the way it acted; that it ran over the berm and up the steep embankment without upsetting; that it proceeded through the orchard and across the excavation. With the other facts, the jury could draw some inferences from the location and condition of the truck at the time it came to rest. . . ."

" '. . . The expression, "under the influence of intoxicating liquor," covers not only all the well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors, and which tends to deprive one of that clearness of intellect and control of himself which he would otherwise possess. State v. Rodgers, 91 N.J.

Law, 212, 102 A. 433; Words and Phrases (Third Series), vol. 7, p. 683,': Com. v. Buoy, 128 Pa. Superior Ct. 264, at page 267, 193 A. 144, at page 145."

In *Risbon v. Cottom*, 387 Pa. 155 (1956), the court again distinguished the *Critzer* case and held that the requirements of *Fisher v. Dye*, supra, were satisfied by permitting the jury to determine, in view of defendant's conduct and mode of operation of his vehicle from the time of his drinking to the time of the collision which occurred two miles from the place of his last drinking, "whether, under all the evidence Risbon's drinking had been such as to impair his ability to operate his automobile safely."

We would distinguish the present case from the *Critzer* and *Fisher v. Dye* line of cases in much the same manner. The evidence in the record now before us, as already stated, reveals a reckless mode of operation by defendant immediately after he had drunk intoxicating liquor at Fruitville Inn. We do not have here a case of drinking and a fatal accident without anything more to connect the two. We have a chain of events leading from the drinking to the accident from which the jury could reasonably infer a causal connection between the drinking and the accident.

In *Vignoli v. Standard M. Freight, Inc.*, 418 Pa. 214 (1965), cited by defendant, several hours had transpired from the time the defendant drank two beers in Greensburg and the time the accident occurred miles away in Carlisle. There was lacking in that case evidence of a causal connection between the drinking and the accident upon which the jury could reasonably base a finding that the defendant's driving was influenced by his drinking.

In *Morreale v. Prince*, 436 Pa. 51 (1969), also relied on by defendant, evidence of a causal connection was likewise lacking. In fact, there was no evidence in that case that defendant had in fact been drinking, the prof-

fered evidence relating only to his having visited Club 30. The same situation was found in the case of *Cook v. Philadelphia Transit Co.*, 414 Pa. 154 (1964), where the defendant attempted to show that the plaintiff had, prior to the accident, emerged from the "Crazy Bar". The Supreme Court held that the court below properly refused the admission of such evidence because even if plaintiff had not denied that she had been in that bar, there still was no evidence that "being in the taproom had in any way incapacitated her from carefully, prudently and soberly crossing the street." The court there very properly concluded: "Thus, the 'Crazy Bar' was wholly alien to the accident, in no way contributed to the happening or an explanation of the accident . . ."

The case of *Billow v. Farmers Trust Co.*, 438 Pa. 514 (1970), another decision cited by defendant, is also clearly distinguishable. In that case defendant sought to prove by an expert witness that the alcohol content of the decedent (defendant's employee) was such as to affect his driving. The Supreme Court held such expert evidence properly was ruled inadmissible by the lower court because it fell short of the requirement that the evidence show "a degree of intoxication which proves unfitness to drive." The court concluded: "Since the offer was insufficient it was properly excluded." There was in that case no evidence indicating a causal connection between the consumption of alcohol by the decedent and the accident. In fact, the negligence of the other driver in emerging from a driveway on the south side of the roadway onto the westbound lane of traffic immediately in front of decedent's vehicle was held to have been properly determined as a matter of law by the court below.

We are of the opinion that the lower court properly allowed the jury to determine the causal connection between the defendant's drinking of several beers and the fatal accident which occurred one mile away from the Fruitville Inn.

Nor can we find merit in defendant's contention that he is entitled to a new trial because the Assistant District Attorney had indicated to the jury in his closing argument that defendant had passed a vehicle around a curve or before the curve at an excessive rate of speed, whereas the evidence indicated that "defendant had completed his pass in due distance prior to the curve, then straddled the yellow divider line and then suddenly crossed the southbound lane into the northbound lane at the curve." We fail to see any material significance to the jury's determination whether defendant found himself in the northbound lane at the curve because he was passing a vehicle or because he had lost control of his vehicle as he rounded the curve. In either case, the important fact is that according to the uncontradicted evidence of disinterested witnesses, he left his proper lane of travel when negotiating the curve and went crashing head on into the Haraczka automobile. Furthermore, the trial judge properly instructed the jury that it was its recollection of the testimony that governed.

Defendant also contends that the presence in the courtroom, during the summations and the court's charge, of decedent's young son and decedent's husband who was a witness in the case, who sat facing the jury during this brief period, was prejudicial and an appeal to a verdict based on sympathy. The trial judge, who witnessed the proceedings, did not agree, stating "there was no display of emotion, anger or prejudice". We can find no reason to hold that the judge was in error and abused his discretion in the matter, especially since he cautioned the jury clearly and adequately that emotions should not and could not control its deliberations. The court stated to the jury: "You see, members of the jury, in order to seek out the truth, if you would follow the guide line of seeking the truth, the evidence, you will save yourselves a lot of time and trouble, because,

very obviously, if you are going to decide this case according to the evidence, you are not going to permit yourselves to be governed or bound by sympathy for any of the parties involved in this case, not sympathy for the survivors of the dead woman, nor sympathy for the defendant who is charged with this crime. You are not going to permit yourselves to be governed by any prejudice that you might have for any of the parties. You are not going to permit yourselves to be governed because you happen to like one of the attorneys better than the other, or you happen to dislike one of the attorneys and you do not dislike the other attorney.

"In other words, according to the evidence means that you must remove from the jury box all considerations of passion, sympathy, prejudice, or any other emotion which will prevent you from following your oath in deciding this case according to the evidence."

Defendant's motions for new trial and in arrest of judgment were properly refused by the court below, and we therefore affirm the judgment of conviction and sentence.

---

DISSENTING OPINION BY JACOBS, J.:

I respectfully dissent. No effort was made at the trial to show that the appellant was driving under the influence of intoxicating liquor at the time of the collision. The officer's testimony that appellant was in a bar and had consumed several beers immediately prior to the collision was irrelevant and highly prejudicial. When appellant objected to the testimony it should have been stricken and the jury told to ignore it. I would grant a new trial on the authority of *Fisher v. Dye*, 386 Pa. 141, 125 A. 2d 472 (1956), and *Morreale v. Prince*, 436 Pa. 51, 258 A. 2d 508 (1969).