485 A.2d 470

**COMMONWEALTH of Pennsylvania**

v.

**Charles J. GRISCAVAGE, Appellant.**

Superior Court of Pennsylvania.

Submitted May 31, 1984.

Filed Nov. 30, 1984.

Petition for Allowance of Appeal Granted June 24, 1985.

142

144

Robert E. Dalton, Jr., Public Defender, Blossburg, for appellant.

James E. Carlson, District Attorney, Wellsboro, for Commonwealth, appellee.

Before MONTEMURO, JOHNSON and HOFFMAN, JJ.

MONTEMURO, Judge:

This matter is before the court on the appeal of Charles J. Griscavage from judgment of sentence on convictions of driving under the influence of alcohol or a controlled substance,[1] and three vehicular summary offenses.[2] The issues in this appeal relate only to appellant's conviction on the charge of driving while under the influence of intoxicating liquor. He contends that the evidence produced at trial was insufficient and that the verdict was against the weight of the evidence.

■■■ The test for evaluating claims based on the sufficiency of the evidence is:

[W]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt.... The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.... Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered.... Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence. (Citations omitted).

*Commonwealth v. Harper*, 485 Pa. 572, 576–77, 403 A.2d 536, 538–39 (1979).

Viewing the evidence in this light, the record reveals the following: In the early morning hours of January 30, 1983, Officer Thomas Young, II, of the Wellsboro Police Department, was conducting a security check of several business establishments along Route 6 in Wellsboro. At approxi-

1. 75 Pa.C.S. § 3731.

2. These summary convictions were under the following statutes: driving on the right side of a roadway, 75 Pa.C.S. § 3301; reckless driving, 75 Pa.C.S. § 3714; and driving vehicle at a safe speed, 75 Pa.C.S. § 3361.

mately 12:40 A.M., Officer Young heard a vehicle with its engine "revving quite high" approaching on Route 6. N.T. July 20, 1983, at 12. A green Chevrolet came into view, and Officer Young observed that it was traveling in "gross excess" of the posted 45 m.p.h. speed limit. *Id.* at 13. In order to pursue the Chevrolet, Officer Young had to turn his police cruiser around, and in doing so, he temporarily lost sight of the Chevrolet. Officer Young regained sight of the vehicle as it was entering a curve about one-quarter mile beyond him. The officer saw the Chevrolet's brake lights come on, and noticed that it had crossed over the center of the highway. After coming around the curve, the officer came upon an accident involving the pursued Chevrolet and another vehicle which had been in the oncoming lane. The accident took place at about 12:44 A.M.

Officer Young went to the Chevrolet first and found the appellant slumped over the steering wheel. He was unable to open the door on the driver's side of the Chevrolet because of the damage from the collision, so he gained access to the vehicle from the passenger's side. The appellant had a large laceration on his forehead and was bleeding profusely. The appellant was conscious, and when asked by the officer if he was all right, he responded "yes." *Id.* at 18. In talking to the appellant, Officer Young detected "an odor of alcohol emanate from his person." *Id.* The officer then went over to the second vehicle which he discovered had sustained more damage than the Chevrolet. Its driver, Sandra Gorcas, was lying on the seat with a severe gouge on her forehead. At that point, the ambulance arrived and the appellant and Ms. Gorcas were taken to Soldiers and Sailors Memorial Hospital.

Officer Young stayed at the scene for about half an hour to clean up debris and examine the area. He observed skid marks roughly fifty feet (50′) in length in the appellant's lane of travel, crossing over the center line at the beginning of the curve, and continuing to the point of impact. He noticed that the roadway was dry although it had been somewhat overcast that evening.

Officer Young proceeded to the hospital where, at some time between 1:19 A.M. and 2:32 A.M., he spoke to the appellant in the emergency room. The officer advised the appellant that he wanted a blood sample taken for a alcohol/blood test, and informed him of his rights. The appellant verbally consented and was then asked three quick questions by the officer.[3] First, the officer wanted to know if the appellant had spotted the police cruiser when it had been parked along the roadway. The appellant indicated that he had not because as he drove down that section of Route 6, his attention had been drawn to the cars parked in the lot of the Horseshoe Inn. Secondly, the officer wanted to know if the appellant had had anything to drink prior to the accident. The appellant replied that he had had "a few." *Id.* at 25. Finally, Officer Young inquired why the appellant had been traveling so fast. The appellant responded that he guessed he was in a hurry to get home.

At 3:15 A.M. the lab technician drew blood from the appellant for the purpose of a alcohol/blood analysis.[4] Before withdrawing appellant's blood, the technician asked the appellant if he was Charles Griscavage, and he replied that he was. The technician then made sure that the appellant knew what was being done and why. She testified that the appellant understood, that he gave her no difficulty, and that she could not tell from her short observation whether or not he had been intoxicated. The lab test subsequently resulted in a reading of .09% ethanol alcohol in appellant's blood by weight.

Dr. Thomas E. Davies was the emergency room physician who treated both the appellant and Sandra Gorcas the night of the accident. Dr. Davies stated that he examined the appellant when he came in, and that his injuries consisted of severe lacerations involving the forehead, upper eye lids, and the bridge of his nose; a contusion of the chest from

3. The officer felt that he should not question the appellant extensively because of his condition.

4. The lab technician was busy with work involving Sandra Gorcas, who was seriously injured, and could not attend to the alcohol/blood test until this time.

hitting the steering wheel; and some problems with breathing. Dr. Davies then spent roughly two hours in surgery with Sandra Gorcas, and afterwards returned to appellant to suture his lacerations. Appellant required over 100 sutures, and during this process Dr. Davies spoke with him briefly and explained what he was doing. Dr. Davies testified that at no time did the appellant appear to him to have been intoxicated, and that he saw no evidence that the appellant had been drinking.

The appellant took the stand to recount the events of January 29, 1983. The appellant was eighteen years old on that date, and lived with his mother in Wellsboro. He had stayed around the house during the day, watching television and shoveling snow. At about 6:30 P.M. his friend, Joseph Mann, came to the house accompanied by two female friends. In the house was a six-pack of bottled beer and two additional bottles of beer which remained from a New Year's Eve party. The four split the beer, each having two bottles. The appellant testified that he finished his second beer at about 8:00 P.M., and that he didn't have anything else to drink the rest of the night. The appellant and his friends watched television and played video games until shortly before 11:00 P.M. At that time they all departed, with appellant heading to Mr. Donuts to pick up his girlfriend, Chris Warriner, who worked there. Joseph Mann testified and corroborated this account.

The appellant arrived at Mr. Donuts a little after 11:00 P.M. Because he was late, Chris Warriner had already been picked up by her grandfather. Richard Cruttenden, appellant's former teacher and coach, was seated at Mr. Donuts having coffee. The appellant approached Mr. Cruttenden and talked with him for about five minutes. Mr. Cruttenden testified that he noticed no alcohol on the appellant's breath, that the appellant was in control of himself in all ways, and that in his opinion the appellant was not visibly intoxicated.

The appellant then drove to Chris Warriner's home, and arrived there around 11:15. Chris Warriner lived with her

aunt, Paula Warriner. Paula Warriner testified that she, her niece, and the appellant talked and watched television until about 12:45, when the appellant left her home. Paula Warriner stated that she kept no alcohol in the house, that the appellant drank no alcohol while he was there, that she didn't smell the odor of alcohol on the appellant, and that the appellant did not act as if he had had anything to drink that evening. Chris Warriner confirmed that there had been no consumption of alcohol that evening at her aunt's house. She also testified that she had been seated right next to the appellant, and that she had kissed him, but did not detect any odor of alcohol.

Finally, the appellant testified as to his drive home. He stated that as he went around the curve, his car started to slide. The appellant thought that he might have hit a patch of ice or a wet spot. The next thing he noticed was the headlights of an oncoming car, and then the two vehicles collided.

To establish that the appellant was guilty of driving under the influence of intoxicants, the Commonwealth had to prove the appellant was (1) operating a motor vehicle (2) while under the influence of intoxicants. *Commonwealth v. Arizini*, 277 Pa.Super. 27, 419 A.2d 643 (1980). Appellant does not contend that the Commonwealth failed to prove the first element. The only question raised here is whether the evidence was sufficient to prove the second element.

In determining whether the Commonwealth proved the second element, the following standards have evolved:

The statute does not require that a person be drunk, or intoxicated, or unable to drive his automobile safely in traffic, but merely that the Commonwealth prove beyond a reasonable doubt that defendant was operating his automobile under the influence of intoxicating liquor.

.     .     .     .     .

The statutory expression 'under the influence of intoxicating liquor' includes not only all the well known and easily

recognized conditions and degrees of intoxication, but also any mental or physical condition which is the result of drinking alcoholic beverages and (a) which makes one unfit to drive an automobile, or (b) which substantially impairs his judgment, or clearness of intellect, or any of the normal faculties essential to the safe operation of an automobile.

*Commonwealth v. Horn*, 395 Pa. 585, 590–91, 150 A.2d 872, 875 (1959); see also *Commonwealth v. Arizini, supra; Commonwealth v. Long*, 131 Pa.Super. 28, 198 A. 474 (1938). The crux of this second element is a causal connection between the accused's imbibition and his unsafe driving—without evidence of such a causal connection, a jury could not reasonably base a finding that the accused's driving was influenced by his drinking. *Commonwealth v. Cave*, 219 Pa.Super. 512, 281 A.2d 733 (1971).

■ The trial court held that the officer's detection of the odor of alcohol, the appellant's admission of drinking, the .09% alcohol/blood result, and the officer's observations of appellant's operation of the vehicle which led to the accident, combined to form a "reasonable inference" that the appellant was unable to safely operate his vehicle due to intoxicants. Lower Court Opinion at 2. While this evidence certainly supports a suspicion or conjecture that the appellant failed to safely operate his vehicle as a result of intoxicants, a guilty verdict may not be based on mere suspicion or surmise. *Commonwealth v. Gordon*, 329 Pa. Super. 42, 477 A.2d 1342 (1984).

Looking closely at the evidence, the first three pieces of evidence—the odor of alcohol, the admission of drinking, and the .09% alcohol/blood result—reflect merely that the appellant had been drinking. This evidence does not support any causal connection that such drinking was responsible for appellant's unsafe driving.

The evidence concerning the odor of alcohol about the appellant's person came from Officer Young. The officer neither described the odor of alcohol as "strong", nor observed any other symptoms which would indicate that

appellant's faculties had been impaired. To the contrary, appellant was cooperative, responded appropriately to the officer's questions, and did not exhibit either slurred speech or bloodshot eyes. Understandably, the officer was never asked whether in his opinion the appellant was intoxicated or visibly under the influence of alcohol. In addition, none of the other persons with whom appellant came into contact that evening—the lab technician, Dr. Davies, Richard Cruttenden, Paula Warriner, and Chris Warriner—noticed any indications that the appellant was under the influence.

The trial court also pointed to the evidence that the appellant had admitted drinking. In reply to a question of Officer Young, the appellant stated that he had had "a few." This evidence accounts for the odor of alcohol detected about appellant's person. This vague admission by itself relays only that within an indeterminate period of time prior to the accident, the appellant had consumed a small but limited number of drinks.

The combined evidence of the odor of alcohol and the admission of having had "a few" establishes only that the appellant had consumed alcohol that evening, and does not demonstrate that the appellant was under the influence at the time of the accident. In fact this evidence standing alone, would be inadmissible. It is well-established that evidence showing only the fact of consumption of alcohol or the odor of alcohol is irrelevant to the question of whether a person was under the influence of alcohol at the time of a vehicular accident. However, such evidence *may become* admissible when joined with additional facts which reasonably establish a degree of intoxication which proves unfitness to drive. *Critzer v. Donovan*, 289 Pa. 381, 137 A. 665 (1927); *Commonwealth v. Arizini, supra; Schwarzbach v. Dunn*, 252 Pa.Super. 454, 381 A.2d 1295 (1977); *Commonwealth v. Reeves*, 237 Pa.Super. 443, 352 A.2d 167 (1975); *Commonwealth v. Cave, supra; Commonwealth v. Stosny*, 152 Pa.Super. 236, 31 A.2d 582 (1943).

Similarly, the blood/alcohol result of .09% conveys no more than the fact that the appellant had been

drinking. Alcohol/blood results *can be* a method by which a causal connection between alcoholic consumption and unsafe driving may be made. If the amount of alcohol by weight in the blood is .10% or more, that result is evidence that the person was under the influence of alcohol and will permit a finding to that effect, although such a finding is not mandatory. Results of .10% or more should be considered with all the other evidence in the case, and if there exists a reasonable doubt as to whether the accused was under the influence of intoxicating liquor, the verdict should be not guilty. *Commonwealth v. DiFrancesco*, 458 Pa. 188, 329 A.2d 204 (1974); *see also* 75 Pa.C.S. § 1547(d)(3).

At the other end of the spectrum, if a alcohol/blood result is .05% or less, the person shall not be charged with driving under the influence of alcohol, or if already so charged, the charge becomes void *ab initio*, 75 Pa.C.S. § 1547(d)(1).

What we are concerned with here is a result in excess of .05% but less than .10%. By statute, such a result: "shall not give rise to any presumption that the person tested was or was not under the influence of alcohol, but this fact may be considered with other competent evidence in determining whether the person was or was not under the influence of alcohol." 75 Pa.C.S. § 1547(d)(2). A result between .05% and .10%, therefore, indicates at most that the person had been drinking. It does not allow an inference to be made that the person was under the influence.[5]

The only remaining evidence which could possibly establish the causal connection between appellant's drinking

5. We note that no attempt was made by the Commonwealth to relate the appellant's alcohol/blood content of .09% at 3:15 A.M., back to the time of the accident at 12:44 A.M. Thus, no expert testified that the appellant's alcohol/blood content would have been .10% or more at the time of the accident. Even if such evidence had been offered, its value would have been nominal. Attempts to relate back alcohol/blood levels to a time prior to the admission of the test are regarded with skepticism. *Schwarzbach v. Dunn*, 252 Pa.Super. 454, 381 A.2d 1295 (1977); *see also Couts v. Ghion*, 281 Pa.Super. 135, 421 A.2d 1184 (1980).

and his unsafe driving lies in his operation of the vehicle. The course of a vehicle and the way it was operated can be decisive in substantiating a causal connection. *Commonwealth v. Long, supra.* The cases upholding a driving under the influence of alcohol conviction on the basis of evidence of some drinking coupled only with evidence of the defendant's manner of operation of the vehicle, have required that the manner of operation be so extreme and uncontrolled that it could be inferred that the defendant's drinking had impaired his faculties. *Commonwealth v. Richardson,* 307 Pa.Super. 191, 452 A.2d 1379 (1982); *Commonwealth v. Cave, supra; Commonwealth v. Long, supra.*

In *Long,* the driver admitted that she had some beer and whiskey the evening of the accident. The only other evidence to support the driving under the influence charge was the bizarre nature of the accident: Skid marks revealed that the vehicle had been moving rapidly when it turned left across the dry and virtually straight highway at about a 45 degree angle, and continued approximately 36 feet before reaching the berm. The vehicle then went over the 4½ foot high berm, and, at a 45 degree angle, went up and over a steep 5 foot high embankment. The vehicle proceeded through an orchard for 35 feet to an excavation which was about 36 feet across. The tiremarks of the vehicle ended at the top of the excavation and reappeared on the other side. There the vehicle finally came to a rest with the rear wheels on top of the bank and the front end in the excavation. The *Long* court held that the factfinder could take into consideration the circumstances of the accident as manifestations of the defendant's having been under the influence while driving. Furthermore, they held that there was sufficient evidence from which the jury could find beyond a reasonable doubt that the defendant was guilty of driving under the influence of alcohol.

In *Cave,* the evidence of the defendant's drinking was confined to his admission that he had consumed "a couple of beers" shortly before the accident. The evidence of defend-

ant's manner of operation of his vehicle was provided by several eye witnesses. The appellant was observed operating his vehicle at a high rate of speed and crossing over the yellow center line (no passing area) to pass three vehicles at one time. The defendant then approached a curve which he was unable to negotiate, and collided head-on with a vehicle being driven in the opposite direction. The court held that the wild, reckless, and dangerous manner of operation of the vehicle supported an inference by the jury that the defendant's drinking had affected his ability to drive safely.

Finally, in *Richardson*, evidence of drinking by the appellant took the form of the investigating officer's observations of a strong odor of alcohol on the defendant's breath, and seven empty beer bottles in the vehicle. The necessary causal connection was furnished by the defendant's erratic manner of operation of the vehicle. The evidence showed that the defendant, with two passengers in his car, had driven onto the entrance of the northbound Scranton expressway, and that he failed to heed the temporarily changed traffic pattern. Due to construction, the right northbound lane of the expressway was closed, and entering traffic was directed to stop (as posted) before proceeding immediately into the left northbound lane. The defendant, however, drove his vehicle to the right of the posted stop sign and onto the shoulder of the highway. He then traveled about 258 feet along the shoulder before colliding with a concrete abutment. The court upheld the driving under the influence conviction.

In the case before us, the defendant's manner of operation of his vehicle was reckless in that he was driving in "gross excess" of the 45 mile per hour speed limit, and his vehicle crossed the center line of the highway as it started around the curve. Even though the appellant braked the vehicle, it remained out of its lane and consequently collided with the vehicle driving by Sandra Gorcas.

This evidence falls far short of the wild and irregular driving noted in *Long, Cave,* and *Richardson.* Driving too fast late at night and consequently crossing the center line around a curve, while not to be excused, does not

demonstrate such bizarre operation of a vehicle that it can be inferred that the driver's faculties were impaired by alcohol. It is unfortunate, but not uncommon, that people in full control of their faculties operate their vehicles at excessive speeds and, if called upon to negotiate a curve when speeding, would be unable to keep the vehicle from crossing the center line. Appellant's operation of his vehicle was undeniably reckless, and appellant does not contest that conviction. However, the circumstances of appellant's reckless operation of his vehicle were not so extreme that we can infer that his faculties were impaired by alcohol. The appellant's manner of operation of his vehicle, therefore, does not supply the necessary causal connection between his drinking and being under the influence while driving.

Accordingly, we hold that the evidence was insufficient to establish beyond a reasonable doubt that the appellant was driving under the influence of alcohol or a controlled substance. The judgment of sentence on this conviction is reversed.

Judgment of sentence reversed.