J-A33034-14

2015 PA Super 122

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| ROBERT N. SITLER | |
| Appellee | No. 3051 EDA 2013 |

Appeal from the Order of November 1, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0000389-2013

BEFORE:  LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

OPINION BY STRASSBURGER, J.:                          **FILED MAY 21, 2015**

This case comes before us on the Commonwealth's interlocutory appeal.  Robert Sitler was charged with multiple vehicular and criminal offenses following a traffic accident that he caused.  Before trial, Sitler filed a motion *in limine* seeking to preclude the Commonwealth from introducing, *inter alia*, evidence of false statements that Sitler had made to the police during the investigation, evidence of Sitler's prior homicide by vehicle conviction, and evidence of Sitler's consumption of alcohol before the accident.  On November 1, 2013, the trial court granted Sitler's motion.  Certifying that the trial court's order substantially handicapped the

_____

[*] Retired Senior Judge assigned to the Superior Court.

prosecution,[1] the Commonwealth appealed the court's order. Upon review, we vacate the order in part and affirm the order in part.

Because this case has not yet been tried, and because the case has not yet been presented to the fact-finder, the following is a summary of the facts underlying Sitler's charges that we derive from the certified record and from Sitler's preliminary hearing.

On November 12, 2012, Regina Qawasmy was returning to her home from work at approximately 9:00 p.m. on High Street in Lower Pottsgrove Township, Montgomery County, Pennsylvania. While traveling on High Street, Qawasmy noticed a pick-up truck driving very close to her rear bumper. Qawasmy repeatedly applied her brakes in an effort to get the truck to back away from her vehicle, to no avail. Soon thereafter, Qawasmy activated her turn signal to inform the trailing pick-up that she was going to turn right onto Sunnyside Road. The driver of the truck immediately revved the engine, and accelerated to the left around Qawasmy's turning vehicle.

When the truck sped around Qawasmy, it struck and killed a sixteen-year-old boy who was standing in the center lane of the roadway. After the

---

[1] **See** Pa.R.A.P. 311(d) ("In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.").

collision, both Qawasmy and the pick-up truck pulled over to the side of the road and parked the vehicles.

Officer Matthew Meitzler of the Lower Pottsgrove Police Department was dispatched to the scene of the accident. When Officer Meitzler arrived at the scene, he located the victim lying against a curb, bleeding from the nose, mouth, and ear. Initially, Officer Meitzler detected a faint pulse. He and an EMT who had arrived on the scene began to perform CPR on the victim until an ambulance arrived and transported the victim to the hospital. The victim died that night at the hospital.

While Officer Meitzler was attending to the victim, Sitler's girlfriend, Denise Dinnocenti, stated that she was the driver of the pick-up truck. Officer Meitzler was directed to escort Dinnocenti to a local hospital to have her blood drawn to ascertain whether she was operating the truck under the influence of alcohol. Officer Meitzler did not take Sitler or anyone else to the hospital for a blood draw.

Officer Meitzler took two written statements from Sitler, one on the night of the accident (November 12, 2012), and one on November 17, 2012. In his initial statement, Sitler claimed that Dinnocenti was driving the vehicle at the time of the accident, and that he was positioned in the front passenger seat at all relevant times. Sitler informed the police that, while he and Dinnocenti were travelling behind the van, Qawasmy abruptly activated her turn signal and quickly began to make the turn. This swift

action forced Dinnocenti immediately to veer into the center lane to avoid hitting Qawasmy's van, thereby striking the victim crossing the road.

Dinnocenti had provided the police a written statement on the night in question that conformed to the version of events provided by Sitler in his first statement. However, upon reviewing the Sitler and Dinnocenti statements a few days after the accident, Officer Meitzler began to notice some material inconsistencies. He decided to re-interview both individuals. In her second interview, Dinnocenti admitted that she was not the driver of the pick-up truck. Dinnocenti told Officer Meitzler that Sitler was the driver, and that she had admitted to being the driver due to Sitler's criminal history and her fear that he would face severe consequences if he was arrested. She also told Officer Meitzler that Sitler had consumed a few alcoholic beverages prior to driving the truck.

When Officer Meitzler re-interviewed Sitler, Sitler conceded that he was driving the pick-up truck on the date in question. Sitler acknowledged that he had been convicted of vehicular manslaughter in Alabama in 2004, after he had struck and killed a pedestrian with his vehicle. Sitler had served a significant sentence for that crime, and he feared that, if he were charged and convicted of a crime for the instant accident, he would be severely punished. Thus, he instructed Dinnocenti and her children (who also were in the car at the time of the accident) to lie to the authorities

about who was driving the vehicle. Sitler also admitted to drinking three beers before driving the pick-up.

Detective David Schanes, an agent of the Montgomery County District Attorney's Office, testified as an expert in the field of accident reconstruction. Detective Schanes was called to the scene of the accident on November 12, 2012, and spoke with Sitler. During the conversation, Detective Schanes noticed that Sitler's body emitted an odor of alcoholic beverages. Sitler admitted to Detective Schanes that he had consumed a few alcoholic drinks, but adamantly denied that Dinnocenti had been drinking.

Detective Schanes then investigated the accident. After doing so, he opined that the victim's body came to rest 182 feet from the impact location. Based upon that information, Detective Schanes determined that the pick-up truck was travelling at least fifty miles per hour at the time of impact, which is fifteen miles per hour more than the posted speed limit of thirty-five miles per hour on High Street. With the assistance of a mechanic, Detective Schanes also determined that there were no mechanical problems with the pick-up truck that could have contributed to the accident. Detective Schanes concluded that the tailgating and the speed of the pick-up truck coincided to cause the accident. Finally, Detective Schanes determined that Sitler owned and insured the pick-up truck that struck and killed the victim.

Detective Schanes also spoke with an agent of the company that insured Sitler's truck. The insurance agent indicated to Detective Schanes that Sitler had reported the accident, and that he informed the agent that Dinnocenti was driving the pick-up at the time of the accident. As noted, this assertion was untrue.

Sitler was arrested and, on December 10, 2012, was charged by criminal complaint with a litany of crimes, including homicide by vehicle, insurance fraud, false reports, unsworn falsifications, criminal conspiracy, and a variety of violations of the Motor Vehicle Code. Sitler filed a pre-trial motion seeking to sever the crimes arising from the Crimes Code, *i.e.*, the insurance fraud, false reports, unsworn falsifications, and criminal conspiracy, from the trial on the homicide by vehicle and Motor Vehicle Code violations. The trial court denied the motion.

Sitler filed pre-trial motions *in limine*, all of which were heard by the trial court on October 31 and November 1, 2013. The issues included, *inter alia*, the preclusion of evidence related to Sitler's alcohol consumption, preclusion of evidence about Sitler's prior homicide by vehicle conviction in Alabama, and preclusion of evidence about false statements made to police and the insurance company about the accident at issue.

On November 1, 2013, the trial court granted Sitler's motions *in limine*, in relevant part, holding that the Commonwealth was precluded from introducing testimony or evidence about Sitler's consumption of alcohol, his

homicide by vehicle conviction in Alabama, and his false statements. On November 4, 2013, the Commonwealth filed a notice of appeal, wherein the Commonwealth certified that the trial court's November 1, 2013 order substantially handicapped its prosecution pursuant to Pa.R.A.P. 311(d). In response, the trial court directed the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 27, 2013, the Commonwealth timely filed a concise statement. On April 30, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

The Commonwealth presents the following three issues for our review:

1. Whether the lower court abused its discretion in concluding that [Sitler's] false statements were not admissible as evidence of consciousness of guilt of reckless driving, where it imposed an additional admissibility requirement contrary to law and, in doing so, impinged on the jury's fact-finding responsibilities?

2. Whether the lower court abused its discretion by not admitting [Sitler's] prior conviction for vehicular manslaughter to prove his knowledge, where the court based its holding on unsupported findings contrary to the record and a misapplication of the legal standard for knowledge?

3. Whether the lower court abused its discretion by excluding all evidence of [Sitler's] alcohol consumption prior to the collision, where it [used] an incorrect standard for determining what supporting facts support alcohol consumption's admissibility, misapplied the law to the facts, and erred regarding the burden of proof?

Commonwealth's Brief at 5.

- 7 -

The Commonwealth first takes issue with the trial court's holding that Sitler could plead guilty to the *crimen falsi* offenses without any of the evidence related to those crimes being admitted at his trial for homicide by vehicle. The Commonwealth contended before the trial court (as it does now before this Court) that evidence that Sitler lied to the police about who was driving the vehicle and that he instructed Dinnocenti and her minor children to lie to the police was admissible to demonstrate Sitler's consciousness of guilt. In its opinion, the trial court concluded that the Commonwealth's issue is premature because Sitler has not yet pleaded guilty, and might never do so. We agree that this issue is not yet ripe for our review.

The Commonwealth's claim is predicated upon what evidence it **may** admit at trial if Sitler first pleads guilty to the *crimen falsi* offenses. In other words, Sitler must plead guilty before the Commonwealth's argument ripens. Sitler has not yet pleaded guilty, and it is possible that he might never do so. "[T]he courts should not give answers to academic questions or render advisory opinions or make decisions based on assertions as to hypothetical events that might occur in the future." ***Philadelphia Entm't & Dev. Partners, L.P. v. City of Philadelphia***, 927 A.2d 385, 392 (Pa. 2007). Thus, because both the trial court and this Court are precluded from issuing purely advisory opinions, *see **Commonwealth v. Neitzel***, 678 A.2d 369, 375 (Pa. Super. 1996) (citing ***Erie Ins. Exch. V. Claypoole***, 673 A.2d 348,

352 (Pa. Super. 1996) (*en banc*)), we vacate that portion of the trial court's order.[2]

The Commonwealth next challenges the trial court's holding that Sitler's Alabama conviction for homicide by vehicle was inadmissible at Sitler's upcoming trial. The Commonwealth argues that Sitler's conviction was admissible as a prior bad act pursuant to Pa.R.E. 404(b) to prove Sitler's knowledge that his conduct could result in the death of another person for purposes of proving the recklessness element of homicide by vehicle. Commonwealth's Brief at 29-30.

Our standard of review is well-settled. "Questions concerning the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." ***Commonwealth v. Russell***, 938 A.2d 1082, 1091 (Pa. Super. 2007) (citing ***Commonwealth v. Whitaker***, 878 A.2d 914, 923 (Pa. Super. 2005)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Mendez***, 74 A.3d

---

[2] The Commonwealth is in no way precluded from raising this issue or pursuing review if and when Sitler pleads guilty, and will suffer no meaningful hardship by our decision.

256, 260 (Pa. Super. 2013) (citation omitted). "[I]f in reaching a conclusion the trial court over-rides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." *Commonwealth v. Weakley*, 972 A.2d 1182, 1188 (Pa. Super. 2009) (citation omitted).

In *Commonwealth v. Sherwood*, 982 A.2d 483 (Pa. 2009), the Pennsylvania Supreme Court set forth the general principles regarding the admissibility of prior bad acts at trial as follows:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Id.* at 497 (citing *Commonwealth v. Powell*, 956 A.2d 406, 419 (Pa. 2008)). "The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts." *Commonwealth v. Ross*, 57 A.3d 85, 98-99 (Pa. Super. 2012) (citing *Commonwealth v. Stanley*, 398 A.2d 631, 633 (Pa. 1979); *Commonwealth v. Constant*, 925 A.2d 810, 821 (Pa. Super. 2007)).

In **Ross**, we recognized the potential danger of Rule 404(b)(2)'s exceptions swallowing the general rule, and we offered the following caution:

> The purpose of Rule 404(b)(1) is to prohibit the admission of prior bad acts to prove "the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). While Rule 404(b)(1) gives way to recognized exceptions, the exceptions cannot be stretched in ways that effectively eradicate the rule. With a modicum of effort, in most cases it is possible to note some similarities between the accused's prior bad act conduct and that alleged in a current case. To preserve the purpose of Rule 404(b)(1), more must be required to establish an exception to the rule—namely a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question…. [T]his Court has warned the prior bad acts may not be admitted for the purposes of inviting the jury to conclude that a defendant is a person "of unsavory character" and thus inclined to have committed the crimes with which he/she is charged.

**Ross**, 57 A.3d at 105-06 (citation omitted).

Instantly, Sitler is charged with, *inter alia*, homicide by vehicle. A person is guilty of that crime if he "recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle…, when the violation is the cause of death." 18 Pa.C.S. § 3732(a).

The trial court disagreed with the Commonwealth's "tenuous" argument that Sitler's prior homicide by vehicle conviction was admissible because "[e]ven without ever having been in an accident, most people

- 11 -

generally know that reckless driving can kill others." Trial Court Opinion, 4/30/2014, at 11.

We agree with the trial court. It does not take a prior conviction for homicide by vehicle for a person to understand or have "knowledge" that hazardous or reckless driving creates risk. Every driver knows this. Thus, this evidence does not meet the requirements for the "knowledge" exception, or any other exception set forth in the rule. In fact, Pa.R.E. 404(b) is designed specifically to keep evidence of the prior accident, which is not connected in any way to the latter accident, from the jury.[3]

_____

[3] This Court has held that the knowledge exception is applicable under limited circumstances. In **Commonwealth v. Russell**, 938 A.2d 1082 (Pa. Super. 2007), a panel of this Court held that the trial court admitted properly evidence that Russell had used an accelerant to start a fire at a juvenile detention facility under the knowledge exception. Specifically, this Court indicated that knowledge about the nature of the liquid given to Russell was crucial for the Commonwealth to establish Russell's intent at trial to assist in setting a dog on fire and thereby to prove her liability as an accomplice and co-conspirator.

Additionally, this Court upheld admission of prior bad acts under the knowledge exception in **Commonwealth v. McCloskey**, 835 A.2d 801 (Pa. Super. 2003). In that case, McCloskey, the mother of a teenager, was being prosecuted for involuntary manslaughter in connection with permitting her teenager to host a party at her home involving alcohol. Teenagers who had been consuming alcohol at that party were later involved in a fatal car crash. McCloskey claimed she had no knowledge that the teenagers would be consuming alcohol in her home. However, this Court upheld the admission of evidence that teenagers had consumed alcohol at prior parties at McCloskey's home, with McCloskey's permission, to show that McCloskey had knowledge that alcohol might be consumed.

Moreover, even if this prior conviction is somehow admissible under the knowledge exception, the Commonwealth still had the burden to show that the probative value of this conviction outweighed the "potential for unfair prejudice." Pa.R.E. 404(b)(2).

Instantly, the Commonwealth's contends that Sitler's "prior conviction is highly probative of his knowledge about the risks of the way he was driving at the time of the collision, establishing the mental state of recklessness." Commonwealth's Brief at 29. However, as we pointed out previously, every driver is aware that driving in an unsafe manner could create risk and cause injury. Thus, there is nothing specific to probe about Sitler's prior conviction. Moreover, the prejudice Sitler would suffer in having a jury find out about this prior conviction is practically insurmountable, even if the trial court provided a cautionary instruction. Accordingly, we hold the trial court's order excluding this evidence was not an abuse of discretion.

In its final issue, the Commonwealth argues that the trial court erred by precluding any evidence of Sitler's consumption of three alcoholic beverages before driving the pick-up truck. The trial court reasoned that the evidence was inadmissible because the Commonwealth was not going to produce an expert to testify that three beers would have caused Sitler to be intoxicated, that consumption of alcohol without more is not evidence of recklessness, and that the evidence would simply be too prejudicial to

Sitler's right to a fair trial. **See** Trial Court Opinion, 4/30/2014, at 3-8. We disagree with the Commonwealth that this evidence was admissible, and that the trial court abused its discretion in precluding it from trial. **See Russell**, **supra** (stating that we review evidentiary rulings for an abuse of discretion).

For purposes of determining whether a driver was reckless, Pennsylvania Courts distinguish between evidence that a driver was intoxicated and evidence that the driver only had been drinking, but was not intoxicated. Although evidence of intoxication does not establish recklessness *per se*, such evidence nonetheless is relevant and admissible. **See Commonwealth v. Jeter**, 937 A.2d 466, 468 (Pa. Super. 2007). Combined with other evidence, evidence of intoxication can be used as a factor to prove recklessness. **Id.** However, where the Commonwealth cannot demonstrate that the driver actually was intoxicated, evidence that the driver had been drinking (such as the odor of alcohol emanating from the driver) is inadmissible to prove that a person was driving recklessly. **See Commonwealth v. Buffington**, 444 A.2d 1194, 1198 n.8 (Pa. Super. 1982) ("Without question, the mere fact of consuming intoxicating liquor is inadmissible to prove unfitness to drive."). However, the inadmissibility of such evidence can be overcome "if in addition to drinking, facts are shown from which a conclusion reasonably follows that the driver was under the influence." **Commonwealth v. Cave**, 281 A.2d 733, 734 (Pa. Super.

1971).    If the Commonwealth can adduce additional facts to prove intoxication, "all the evidence … [is] admissible … to determine whether or not the drinking was wholly or partly the cause of an accident." *Id.*

In *Cave*, which the Commonwealth relies upon exclusively, Cave consumed three beers and then immediately drove with excessive speed and in a reckless manner.  Within one mile of leaving the pub where he was drinking, Cave failed to negotiate a curve, crossed the center line, and hit an oncoming car head-on, killing a passenger.  *Id*. at 734.  Cave argued that admission of evidence of his consumption of only three beers was erroneous, and in violation of the long-standing principle that "the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably established a degree of intoxication which proves unfitness to drive." *Id.* (citing *Critzer v. Donovan*, 137 A. 665, 666 (Pa. 1927).  We clarified and expanded this rule, as follows:

> It is true that the 'mere' drinking of intoxicating liquor is inadmissible to prove that a driver was under the influence of intoxicating liquor and unfit to drive an automobile.  However, it is also true that if in addition to the drinking, facts are shown from which a conclusion reasonably follows that the driver was under the influence of intoxicating liquor, all the evidence, the drinking and the surrounding circumstances are admissible for the consideration of the trier of facts to determine whether or not the drinking was [w]holly or partly the cause of an accident for which he is being held responsible.

*Id.*

We then examined *Critzer*, in which our Supreme Court established the still-precedential rules governing the admission of evidence relating to

the consumption of alcohol at a trial for a vehicular offense involving recklessness. In *Critzer*, the Pennsylvania Supreme Court held as follows:

> It may be conceded that in an action wherein reckless or careless driving is the matter at issue, proof of intoxication would be relevant. When evidence of intoxication appears in a case such as this[,] it is offered … to show a circumstance from which recklessness or carelessness of the driver may be inferred. Care should then be taken as to the use of such evidence. There was no allegation or proof of intoxication, [n]or was there any evidence of conduct or appearance from which a reasonable inference could be drawn that the man was intoxicated…. Standing alone, the odor of liquor does not prove, nor is it evidence of, intoxication: Joined with other facts it may become so…. Proof of the odor of liquor is admissible for certain purposes, but its natural consequence is not reckless driving.

*Critzer*, 137 A. at 666 (citations omitted).

Ultimately, in *Cave*, we held that the *Critzer* rule was inapplicable, because there was "an abundance of evidence" to prove that Cave was operating the vehicle "under the influence of intoxicating liquor." *Cave*, 281 A.2d at 736-37. In other words, we held that there were other facts that could be "joined" with the odor of alcohol to demonstrate that Cave was intoxicated, and that the intoxication contributed to the accident. Notably, Cave's extremely dangerous driving occurred immediately after he left the bar after drinking the alcohol.

The same cannot be said in the instant case. Based upon the still-binding rules set forth in *Cave* and *Critzer*, evidence of intoxication would be relevant and admissible to demonstrate that a driver was driving recklessly. However, evidence short of intoxication, such as an odor of

alcohol emanating from a person, without more, is not admissible to prove recklessness when driving unless that evidence can be joined with other relevant facts to establish intoxication. In the case *sub judice*, the evidence that we can glean from the certified record demonstrates that Sitler had consumed three beers approximately three hours before driving the vehicle. Although each of the police officers at the scene described an odor of alcohol emanating from Sitler, none of those officers alleged that Sitler appeared to be intoxicated, unsteady, or otherwise influenced by the three beers. Unlike **Cave**, Sitler did not drink three beers, jump into his truck, and immediately drive in a hazardous manner that caused an accident killing a person within one mile. In other words, no evidence exists other than the odor of alcohol to suggest that Sitler was intoxicated.

In Pennsylvania, the focus on the admissibility of alcohol evidence is intoxication. The odor of alcohol alone is insufficient to establish intoxication. The record provides no evidence of intoxication, and the Commonwealth has admitted that it will not be calling an expert at trial to establish that Sitler's consumption of three beers rendered him intoxicated, or that those beers contributed to the accident. Thus, the Commonwealth cannot establish any additional facts that would render the evidence admissible.

Under such circumstances, we also note that the prejudice that would result from the admission of this evidence would be insurmountable for

Sitler. We agree with the trial court that the evidence would "improperly suggest that [Sitler] was intoxicated, and that such intoxication caused the accident[.]" Trial Court Opinion, 4/30/2014, at 7. Moreover, "[Sitler] would be forced to rebut the innuendo that three beers, three hours earlier caused him to drive recklessly at the time of the accident." *Id.* Without more, the evidence is too prejudicial to be admitted at trial. Thus, the trial court did not abuse its discretion in granting Sitler's motion *in limine* in this regard.

In sum, we vacate the portion of the order with respect to admission of evidence of Sitler's false statements, as the trial court addressed the issue prematurely. We affirm the trial court's order with regard to its ruling on the admissibility of Sitler's prior conviction and on the admissibility of the evidence of Sitler's consumption of alcohol.

Order affirmed and vacated in part. Jurisdiction relinquished.

Judge Lazarus joins the Opinion.

Judge Wecht files a Concurring and Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/2015

- 18 -