J-A30038-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| IAN XAVIER MAUTE, | |
| Appellant | No. 563 EDA 2014 |

Appeal from the Judgment of Sentence January 9, 2014
in the Court of Common Pleas of Pike County
Criminal Division at Nos.: CP-52-CR-0000032-2013;
CP-52-CR-0000508-2012;
CP-52-CR-0000518-2012

BEFORE: LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED MARCH 05, 2015**

Appellant, Ian Xavier Maute, appeals from the judgment of sentence imposed following a jury conviction of two counts of robbery, two counts of theft by unlawful taking, two counts of possessing instruments of crime, two counts of recklessly endangering another person, two counts of simple assault, one count of criminal conspiracy to commit intimidation of witness or victim, one count of criminal solicitation to commit intimidation of witness or victim, one count of criminal conspiracy to commit hindering apprehension or prosecution, and one count of criminal solicitation to

_____

[*] Retired Senior Judge assigned to the Superior Court.

commit hindering apprehension or prosecution.[1] These charges related to a string of robberies on a small stretch of road just a few blocks from Appellant's home. Appellant challenges the trial court's rulings on his motion to sever and hearsay objection, and the weight and sufficiency of the evidence for all convictions.[2] We affirm on the basis of the trial court opinion.

In its April 16, 2014 opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. (**See** Trial Court Opinion, 4/16/14, at 1-4). Therefore, we have no reason to restate them here.

Appellant raises the following issues for our review:

1.    Whether the trial court erred when denying [Appellant's] motion to sever criminal information 518-2012 from criminal information 32-2013?

2.    Whether the trial court erred when overruling [Appellant's] objection to hearsay testimony presented by the Commonwealth during the [omnibus] pre-trial hearing?

3.    Whether the verdict was [contrary] to the weight of the evidence in that the evidence presented at trial was insufficient

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3921(a), 907(b), 2705, 2701(a)(3), 903(c), 901(a), 903(c), and 901(a), respectively.

[2] We note that, although the trial court addressed Appellant's weight and sufficiency of the evidence arguments, Appellant has impermissibly conflated them into one issue. (**See** Trial Court Opinion, 4/16/14, at 14-18; Appellant's Brief, at 31-37); **see also Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000) (differentiating weight and sufficiency arguments).

to prove the elements of the offenses charged, beyond a reasonable doubt?

(Appellant's Brief, at 10).[3]

Preliminary we note that "[a] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." ***Commonwealth v. Griffin***, 65 A.3d 932, 938 (Pa. Super. 2013, *appeal denied*, 76 A.3d 538 (Pa. 2013) (citations omitted); ***see also*** Pa.R.Crim.P. 607.

Here, the docket indicates that Appellant did not file a pre-sentence motion. Furthermore, he did not raise his weight of the evidence claim orally prior to sentencing or in his post-sentence motion. (***See*** N.T. Sentencing, 1/09/14, at 4-9; Post-Sentence Motion, 1/21/14, at unnumbered pages 1-3). Accordingly, this issue is waived. ***See Griffin***, ***supra*** at 938; Pa.R.Crim.P. 607.

It is well-settled that "[w]hether or not separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or

---

[3] Appellant has abandoned his argument that his constitutional "rights were violated when the [t]rial [c]ourt denied [his] [m]otion [t]o [e]xclude all evidence after clearly inadmissible evidence was displayed to the [j]ury by the Commonwealth." (Concise Statement, 3/07/14, at unnumbered page 2).

prejudice and clear injustice to the defendant." ***Commonwealth v. Newman***, 598 A.2d 275, 277 (Pa. 1991) (case citation omitted).

Similarly, "[r]ulings on the admissibility of evidence . . . are within the discretion of the trial judge, and such rulings will form no basis for appellate relief absent an abuse of discretion." ***Commonwealth v. Johnson***, 2014 WL 7392218, at *22 (Pa. filed Dec. 30, 2014). However,

> Because evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary.
>
> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt

***Id.*** at *8.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude that there is no merit to Appellant's issues. The trial court properly disposes of all of the questions presented. (***See*** Trial Ct. Op., at 4-11, 14-18) (finding that the trial court properly: (1) denied severance and determined that (a) evidence in all three robberies would be admissible in separate trials, (b) jury could separate evidence of each crime to avoid confusion, and (c) consolidation did not prejudice Appellant; (2) overruled objection to alleged hearsay statements not offered to prove truth of what they asserted; and (3) rejected challenge to sufficiency of evidence where (a) victims and

other Commonwealth witnesses were credible, and (b) existence of security footage showed the robberies and recorded phone conversations identified that Appellant conspired and solicited Paul Bertino to retrieve a pair of sneakers).

Accordingly, we find Appellant's weight claim waived and reject all other claims on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/2015

IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| | : | 508-2012 CRIMINAL |
| Plaintiff | : | 518-2012 CRIMINAL |
| | : | 32-2013 CRIMINAL |
| v. | : | |
| | : | |
| IAN XAVIER MAUTE, | : | |
| | : | |
| Defendant | : | |

OPINION SUBMITTED PURSUANT TO PENNSYLVANIA RULE OF

APPELLATE PROCEDURE 1925

AND NOW, this _16th_ day of April, 2014 after careful review of the record,

we continue to stand by our decision and respectfully request the Superior Court to

uphold our Orders of January 9 and January 22, 2014. This Court would also like to add,

pursuant to Pennsylvania Rule of Appellate Procedure 1925, the following:

I.    FACTUAL AND PROCEDURAL HISTORY

The evidence at trial, viewed in the light most favorable to the Commonwealth as

the verdict winner, establishes that on October 1, 2012, the Appellant, Ian Xavier Maute,

committed the crime of Robbery at the store Smoker's Paradise. That Appellant entered

the store with his head and face obscured by a hooded jacket and mask and while waiving

a large knife at the cashier demanded she provide him with the cash in her register.

The Jury also found that the Appellant committed these acts again on October 19,

2012. This time, however, the Appellant targeted the store Karen's Flea Market, but

otherwise repeated his previous actions in committing an armed assault against the

cashier in order to rob the store.

1

Appellant was subsequently apprehended and arrested by the police department and charged with three counts of robbery, three counts of unlawful taking or disposition, two counts of possessing an instrument of crime, three counts of recklessly endangering another person and three counts of simple assault. While being held on these charges, Appellant placed calls to one Paul Bertino and entered into a criminal conspiracy to intimidate witnesses and a conspiracy to hinder apprehension or prosecution. These charges were consolidated and made a part of the trial on the previous charges.

On August 19, 2012, Appellant's counsel filed an Amended Omnibus Pre-Trial Motion requesting the suppression of items found pursuant to a search warrant, the suppression of witness Lindsey Bloomer's identification of the Appellant, a motion to compel witness identification and contact information and a motion for severance of the criminal informations.

On August 27, 2013, this Court granted the Omnibus Motion with respect to the motion to compel, the Appellant withdrew the request for suppression of items found pursuant to the search warrant and this Court denied the motions to suppress the witness identification and for severance.

A jury was impaneled on November 1, 2013. The trial was held on November 12 and 13, 2013. A verdict was rendered on November 14, 2013. The Appellant was sentenced on January 9, 2014. Appellant filed a Post-Sentence Motion on January 21, 2014, asserting that the evidence was insufficient to sustain the verdict guilty, requesting a new trial and requesting a reconsideration of the Appellant's sentence. This Court denied all of the Appellant's motions on January 22, 2014.

On February 19, 2014, Appellant filed a Notice of Appeal to the Superior Court.

2

This Court ordered a Concise Statement on February 20, 2014. The Appellant filed a Concise Statement of Matters Complained on Appeal on March 7, 2014. In his Concise Statement, Appellant lists the following issues as matters complained of on appeal:

1. Appellant is entitled to a new Trial because his Pa. Constitution Article 1 §9 and U.S. Constitution Amendment XIV Due Process Rights, as well as his Non Constitutional Pa. R. Crim. P. 582 rights were violated when the Commonwealth was improperly permitted to consolidate, into one trial, the offenses contained in Criminal Information 518-2012 and 32-2013. Appellant was entitled to a separate Trial on each of the Criminal Informations.

2. Appellant is entitled to a new Trial because his Pa. Constitution Article 1 §9 and U.S. Constitution Amendment XIV Due Process Rights, as well as his Non Constitutional Pa. R. Evid. 402, 611 and 802 rights to present relative evidence, to duly cross exam witnesses and rights against hearsay testimony were violated when the Trial Court allowed the Police Officer to testify, at the Pre-Trial Hearing, regarding the statements made by an out of Court witness as to the witness' out of Court alleged identification of the Appellant. The Trial Court, in overruling the Appellant's objections to hearsay prevented the Appellant from presenting relative evidence and fully cross examining the witness regarding her identification and statements.

3. The Appellant is entitled to a new Trial because his Pa. Constitutional Article 1 §9 and U.S. Constitution Amendment XIV Due Process Rights, as well as his Non Constitutional Pa. R. Evid. 103 rights were violated when the Trial Court denied Appellants Motion to Exclude all evidence after clearly

3

inadmissible evidence was displayed to the Jury by the Commonwealth. The display of this evidence to the Jury was improper and prejudicial in as much as it suggested to the Jury that the Appellant was the owner of shoes identified by one of the witnesses.

4. That the verdict was contrary to the weight of the evidence, in that the evidence and testimony presented at Trial was insufficient to prove the elements of the offenses charged, beyond a reasonable doubt.

## II. DISCUSSION

A. **The Appellant's Pennsylvania Constitution Article 1 §9 and U.S. Constitution Amendment XIV rights and Rule of Criminal Procedure 582 rights were not violated when this Court allowed the consolidation of separate criminal informations.**

Pennsylvania's Rules of Criminal Procedure provide that:

"Offenses charged in separate indictments or informations may be tried together if:
(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
(b) the offenses charged are based on the same act or transaction".

Pa. R. Crim. P. 582(A)(1); *See also* Pa. R. Crim. P. 583 (noting that a court may order separate trials if it appears that any party may be prejudiced by offenses or defendants being tried together).

This rule has been elaborated on by both the Superior and Supreme Courts as explained in the case of *Commonwealth v. Kunkle*:

"Offenses charged in separate informations may be tried together if they are 'based on the same act or transaction' or if 'the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger or confusion'. The court has discretion to order separate trials if 'it appears that any party may be prejudiced' by consolidating the charges'.

4

Our Supreme Court has established a three part test, incorporating these two rules for deciding the issue of joinder versus severance of offenses from different informations. The court must determine whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses".

*Commonwealth v. Kunkle*, 79 A.3d 1173, 1190 (Pa. Super. 2013) (quoting *Commonwealth v. Thomas*, 879 A.2d 246 (Pa. Super. 2005) and *Commonwealth v. Lark*, 518 Pa. 290, 302 (1988)) (other and internal citations omitted); *See Commonwealth v. Robinson*, 581 Pa. 154 (2004) *cert denied*, 546 U.S. 983 (2005); *See also Commonwealth v. Carson*, 590 Pa. 501, 568 (2006).

In this case, the Appellant was alleged to have conducted three robberies across two locations. Criminal Information 32-2013 covers two of these incidents, those relating to Smoker's Paradise while Criminal Information 508-2012 covers the incident at Karen's Flea Market. If the Appellant's argument is similar to the one contained in his Post-Sentence Motion, then it appears that counsel will argue that the merger of these two Informations violates both subsections (a) and (b) Rule 582. This Court would submit, however, it was proper to merge these two Informations under both subsections (a) and (b) in accordance with the test developed by our Supreme Court and provided *supra*.

The first issue a court must determine is whether the evidence of each of the offenses would be admissible in a separate trial for the other. *Id*. In this case, they would be. While Pennsylvania Rule of Evidence 404 would appear to prohibit the introduction of such evidence on its face, this Court found the evidence to fall under one of the exceptions for permitted uses. *See* Pa. R. Evid. 404(b)(1-2).

Specifically, the evidence for all three robberies was admissible in order to show

5

plan, identity and preparation on the part of the Defendant. Similar to the case of *Commonwealth v. Dozzo*, "the robberies were closely linked temporally and geographically, and showed the like manner in which Appellant committed the robberies". *Commonwealth v. Dozzo*, 991 A.2d 898, 903 (Pa. Super. 2010) (citing *Commonwealth v. Taylor*, 671 A.2d 235 (Pa. Super. 1996) *appeal denied*, 54 Pa. 642 (1996)). In *Dozzo*, the Superior Court held that such connecting evidence was sufficient to show a criminal defendant's common scheme, plan, design and identity for a spree of robberies and would have been admissible in separate trials. *Id.*

Notably, the evidence cited in *Dozzo* is related to similarities in how the robberies were conducted, the descriptions of the perpetrator's accent and victims identification of the Defendant as a robber. *Id.* Further, the fact that the defendant had assistance from co-defendants for some, but not all, of the robberies was not enough to alter "the fundamental similarities in the methods and goals of the robberies". *Id.*

The case *sub judice* bears a resemblance to these circumstances. All of the robberies Appellant was accused of occurred in the Matamoras borough along the same stretch of roadway. *See* Criminal Information filed to 518-2012 and 32-2013 (noting that the crimes also occurred during a two-month time period); *See also Transcript of Trial of Ian Maute*, held on November 12, 2013 (noting the testimony of both Lindsey Bloomer and Karen Menter). All of them were done by a white male in a hooded-jacket who covered his face with a mask and wielded a knife. *Transcript of Trial Ian Maute*, held on November 12, 2013, pgs. 43-44, 52 and 129, lines 21-23, then 8-9 then 11-18 finally 8-11. In two instances, during the second Smoker's Paradise robbery and the robbery of Karen's Flea Market Store, witnesses described it as being a very large knife. *Id* at pgs.

6

53 and 129, lines 12-15 then 15-19.

Thus, there were many similarities binding these events together, much as *Dozzo*'s were joined by the Defendant's Jamaican or African accent, the fact that all the robberies occurred within a one-month period near the same geographical location and threatened them with a gun. *Commonwealth v. Dozzo*, 991 A.2d 898, 903 (Pa. Super. 2010). For the Appellant here, the Appellant committed all of the robberies within a two-month period, near the same geographical location and threatened the victims with a knife. This Court therefore believed that the probative value of the evidence outweighed any prejudicial effect and would have been admissible in separate trials.

Furthermore, as an alternative, if the evidence was not admissible as an exception under 404(b)(2), it was also admissible as *res gestae*. Where evidence is "part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts" it can be admissible at trial. *Commonwealth v. Lark*, 518 Pa. 290, 497 (1988); *Accord Commonwealth v. Miles*, 545 Pa. 500, 518-9 (1996); *Commonwealth v. Paddy*, 569 Pa. 47, 69-70 (2002); *Commonwealth v. Murphy*, 540 Pa. 318, 328 (1995); *Commonwealth v. Nolen*, 535 Pa. 77, 88-9 (1993); *Commonwealth v. Sam*, 535 Pa. 350, 359-60 (1993). Due to the proximity of the robberies to one another, their close geographical location and the similarities of the perpetrator involved, this Court believed that they were all part of one chain or sequence and were part of the history of how the case formed. This was supported by the testimony of Corporal McCormick at the pre-trial hearing. *See Transcript of Pre-Trial Omnibus Hearing*, held on August 23, 2013, pg. 39, lines 4-22.

The second issue this Court had to determine is whether the jury could separate

7

the evidence of the crimes so as to avoid the danger of confusion. *See Commonwealth v. Kunkle*, 79 A.3d 1173, 1190 (Pa. Super. 2013). This Court determined they could. Specifically, the robberies of Smoker's Paradise and Karen's Flea Market Store featured different witnesses. These witnesses, Ms. Lindsey Bloomer and Ms. Karen Menter, did not offer overlapping or confusing testimony, but would speak to two different events at two separate locations. The witnesses were also presented in a clear, logical order when giving testimony. Further, only one surveillance recording for each location were being offered as evidence; one for the second Smoker's Paradise robbery and one for the robbery of Karen's Flea Market Store. Thus, the risk that the jury would confuse the issues was minimal. Indeed, the jury did successfully separate the charges as it found the Appellant not guilty of the first robbery of Smoker's Paradise.

Finally, the third issue this Court had to determine whether the Appellant would have been unduly prejudiced by the consolidation of the offenses. *Id.* Based upon the determinations discussed *supra*, this Court believed he would not be.

In addition, this Court did not violate the Appellant's fundamental right to due process in reaching this determination. On August 23, 2013, when argument was held on the Appellant's motion to sever the criminal informations, his counsel was present to give and respond to argument and freely cross-examined witnesses. At no time was the Appellant denied access to materials nor was he prohibited from being present for this hearing. In none of the Appellant's previous filings nor at any time during oral argument did he argue that he was being denied any of these rights. Finally, all proper notices and discovery were provided to the Appellant in a timely fashion. Consequently, this Court can determine no basis for the Appellant to allege a violation of his due process rights.

8

B. **The Appellant's Pennsylvania Constitution Article 1 §9 and U.S. Constitution Amendment XIV rights and Rules of Evidence 402, 611 and 802 were not violated when a police officer was allowed to testify to out of court statements during the preliminary hearing.**

This Court submits that the evidence presented by the police officer was both relevant and not hearsay. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact". *Commonwealth v. Bullock*, 948 A.2d 818, 827 (Pa. Super. 2008). This is subject to the caveat that "[e]vidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice". *Commonwealth v. Page*, 965 A.2d 1212, 1220 (Pa. Super. 2009).

In this case, the witness in question was Corporal Matthew McCormack, who testified at the Omnibus Pretrial Hearing as to what the victim told him the description of the perpetrator was. *Transcript of Omnibus Pretrial Hearing*, held on August 23, 2013, pgs. 12-15, lines 15-26, 11-16, 14-27 then 1-2. Specifically, Corporal McCormack's testimony was that the victim described the perpetrator as a thin built man, with brown hair, brown eyes, six feet and two inches tall with a distinguishable voice that she recognized. *Id.* The victim also identified his attire and that he wielded a knife. *Id.*

This evidence is highly probative, but not just for the truth of the statements being offered by Corporal McCormack. The reason the Commonwealth sought to admit this testimony was to reinforce the reliability of a line-up that occurred later where Ms. Bloomer identified the Appellant. The prior consistency of Ms. Bloomer's description coupled with her selection mutually reinforce her credibility. This was relevant because the Appellant at this Pretrial Hearing was trying to suppress his identification by Ms. Bloomer. *See Amended Omnibus Pre-Trial Motion*, filed August 19, 2013 at pg. 3.

9

Moreover, this Court would note once again that this evidence was offered at an Omnibus Pretrial Hearing and not at the Appellant's actual trial. This testimony was not used to determine the Appellant's actual guilt or innocence, but was instead offered to explain Ms. Bloomer's description of the perpetrator and her subsequent identification of the Appellant in a subsequent police lineup. *Id* at pgs. 11-12, lines 17-25 then 1-11. Any prejudicial effect on the Appellant was thus even further minimized.

With regards to the alleged violation of Rule of Evidence 611, this Court cannot find a basis for the Appellant's complaint. Rule 611 is not at issue with any of the content of what Corporal McCormack testified to. *See* Pa. R. Evid. 611 (noting the sections of the rule are "Control by the Court; Purposes", "Scope of Cross-Examination" and "Leading Questions").

This Court can only guess that the Appellant is alleging some violation of 611(b), relating to the scope of cross-examination, but at the Omnibus Pretrial Hearing Appellant's counsel was permitted to freely cross-examine Corporal McCormack. *See Transcript of Omnibus Pretrial Hearing*, held on August 23, 2013, pgs. 13-20. The Commonwealth did not object to any of the Appellant's cross-examination questions nor did this Court hinder the examination in any way.

Further, the Appellant's Concise Statement elaborates that this Court's overruling of the hearsay objections raised to Corporal McCormack's testimony prevented him from fully cross-examining Ms. Bloomer. This is a non-issue. If the Appellant wished to question Ms. Bloomer directly, he had the ability to call her as a hostile witness of his own. The fact that the Commonwealth did not call her and instead relied upon the testimony of Corporal McCormack does not represent a due process violation for the

Appellant.

Finally, the third alleged violation centers on admission of what the Appellant believes to be inadmissible hearsay. Hearsay is defined as an oral or written assertion or nonverbal conduct if it is intended as an assertion made by a declarant while not testifying at the current trial or hearing but which is offered to prove the truth of the matter asserted in the statement. *See* Pa. R. Evid. 801(a-c). This Court found, as the Commonwealth argued when the Appellant made the initial objection to the Corporal's testimony, that his statements were not hearsay because they were not being offered to prove the truth of what they asserted. *See Transcript of Omnibus Pretrial Hearing*, held on August 23, 2013, pg. 11, lines 18-23.

Specifically, the Commonwealth represented that it was eliciting the testimony not to prove that the perpetrator "did have X, Y, Z characteristics but rather that Miss Bloomer gave the description and that then leads to the reliability of the line-up that occurs later". *Id.* "A statement is hearsay only if it is offered to prove the truth of the matter asserted *in the statement*". Pa. R. Evid. 801 (official note) (emphasis added). In this case, the statements all related to the perpetrator's appearance or clothing, which the Commonwealth was not attempting to prove at that time. *See Transcript of Omnibus Pretrial Hearing*, held on August 23, 2013, pgs. 11-16. The Commonwealth instead was trying to show the consistency between the statements describing the perpetrator and Ms. Bloomer's selection of the Appellant at a subsequent line-up. The statements testified to by Corporal McCormack are therefore not hearsay by definition. *See* Pa. R. Evid. 801(c)(2).

C. **The Appellant's Pennsylvania Constitution Article 1 §9 and U.S. Constitution Amendment XIV rights and Rule of Evidence 103(d) were not**

11

**violated when this Court denied the Appellant's Motion to Exclude All Evidence.**

Pennsylvania's Rules of Evidence provide that:

"Preventing the Jury from Hearing Inadmissible Evidence. To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means".

Pa. R. Evid. 103(d).

This Court could find no case law directing addressing the application of this rule to the situation that confronted us in this case. Here, the item giving rise to the Appellant's Motion to Exclude All Evidence was specifically *not* admitted into evidence at any time. At issue is the item marked as Commonwealth's Exhibit 22, which was marked by the Commonwealth on the first day of trial. *Transcript of Trial of Ian Maute*, held on November 12, 2013, pg. 255, lines 1-2 then 12-17. At this time, all the jury knew is that they were a pair of white and black sneakers that the witness claimed were found in the Appellant's bedroom. *Id.*

The Appellant's attorney objected to the moving of Exhibit 22 into evidence and this Court instructed the parties to move on for now. *Id* at pg. 256 lines 3-12. The issue did not return again until the second day of trial when Appellant's attorney made his Motion to Exclude All Evidence. *Transcript of Trial of Ian Maute*, held on November 13, 2013, pg. 4 lines 3-18. At this point, the jury had received no additional exposure, however. The basis of Appellant's Motion was that Exhibit 22 was not in any way related to this case. *Id* at pgs. 4-5, lines 20-25 then 1-15.

So far as this Court was informed, Exhibit 22 was a pair of black and white sneakers that were found in the residence of one Daniel Ortiz. *Id.* Mr. Ortiz had no relation to this case or these crimes whatsoever. The witness testified that Exhibit 22 had

12

only even made it to trial due to a mistaken handoff between himself and another Evidence Officer outside the evidence locker. *Id* at pg. 35, lines 3-13. The Commonwealth did not controvert these facts and did not object to the exclusion of Exhibit 22.

Despite the minimal exposure the jury had to Exhibit 22 at this time, this Court granted the Appellant permission to delve into the witness's mistake on cross-examination. *Id* at pg. 6 lines 1-5. Appellant's counsel then proceeded to do so in detail, specifically querying the witness regarding his mistake in handling the evidence. *Id* at pgs. 20-24 (entire pages). Both the Commonwealth and the Appellant continued to question the witness about Exhibit 22 and the police department's methods of storing evidence on Re-Direct and Re-Cross-Examination. *Id* at pgs. 31-36.

This Court submits that none of this violated Rule 103(d). The Rule begins with the limitation that it operates "[t]o the extent practicable...". Pa. R. Evid. 103(d). Given the mistaken and surprise nature of Exhibit's 22 entry into the Commonwealth's perspective evidence pool, there was no reasonable way for this Court to know it was not part of the evidence for this case before it was brought up in trial. Once Exhibit 22 was brought up, however, this Court did not allow it into evidence and did not allow further mention of it until the issue could be investigated further.

Furthermore, this Court allowed the Appellant to control the extent Exhibit 22 was subsequently exposed to the jury by allowing him to inquire into the matter on cross-examination at his discretion. The Commonwealth was thus also bound by the limits of the Appellant's cross-examination. This Court acted to the fullest extent practicable in keeping inadmissible evidence from being suggested to the jury and in remedying the

13

situation once they had been exposed.

The Appellant's Motion to Exclude All Evidence, by contrast, would not have done that. The original exposure of the jury to Exhibit 22 would not be undone by removing the rest of the Commonwealth's lawfully presented evidence. Neither would the Appellant have been given a chance to attack the credibility of the witness for mistakenly submitting evidence. This Court is also not certain that the jury could have actually disregarded all of the evidence they had previously seen admitted. The effect of Appellant's Motion might have been to declare a mistrial in that case. Due to the limited nature of the jury's initial exposure to Exhibit 22, however, a mistrial did not seem warranted.

This Court therefore submits that it followed an appropriate course under Pa. R. Evid. 103(d) to minimize and correct any prejudice done to the Appellant. Further, since this Court acted within the confines of Rule 103(d) and granted to the Appellant control over the scope of his cross-examination into Exhibit 22, this Court does not believe his Constitutional rights were violated.

D. **The Jury's verdict was not contrary to the weight of the evidence.**

"The test for evaluating claims based on the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the [verdict winner], and drawing all reasonable inferences favorable to the [verdict winter], there is sufficient evidence to find every element of the crime beyond a reasonable doubt". *Commonwealth v. Mongiovi*, 521 A.2d 429, 592-3 (Pa. Super. 1987) (quoting *Commonwealth v. Griscavage*, 485 A.2d 470, 472 (Pa. Super. 1984)). "Before a court will award a new trial on the ground that the verdict was against the weight of the evidence, it must appear

14

from the record that the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative, so that right may be given another opportunity to prevail". *Commonwealth v. Barnhart* 434 A.2d 191, 192 (Pa. Super. 1981) (citing *Lupi v. Keenan*, 396 Pa. 6, 8 (1959)).

In this case, the Appellant was convicted of two counts of robbery, two counts of theft by unlawful taking, two counts of possessing instruments of crime, two counts of recklessly endangering another person, two counts of simple assault, one count of criminal conspiracy to commit intimidation of witness or victim, one count of criminal solicitation to commit intimidation of witness or victim, one count of criminal conspiracy to commit hindering apprehension or prosecution and one count of criminal solicitation to commit hindering apprehension or prosecution. *See Verdict*, filed November 14, 2013.

Based upon all of the evidence discussed *supra*, such as the Appellant being identified by name and recognized by Ms. Bloomer, the fact that the clothing described by Ms. Menter as being worn by the perpetrator was found in the Appellant's home, the Appellant being caught on video on two occasions committing the criminal acts, it can hardly be said that it shocks the conscience for a jury to find him guilty of robbery. It is readily apparent that the perpetrator threatened both Ms. Bloomer and Ms. Menter with serious bodily injury by brandishing that large knife and that he did so while committing a theft and robbing both stores of their lawfully earned money.

Further, the crime of theft by unlawful taking or disposition is also apparent from this evidence. Both witnesses testified that an amount in excess of $200 had been stolen from their stores, that the money was lawful property of their stores, that they did not give the Appellant permission to take the money and the Appellant fled with the money.

15

He did not return it of his own volition at any point. The Appellant taking the money and fleeing the scene was also recorded by the security cameras which were played for the jury.

The weight of the evidence also supported the Appellant's convictions for possessing an instrument of crime for similar reasons. He was clearly identified while holding and brandishing the knife at Ms. Bloomer in order to commit robbery. While Ms. Menter did not know who he was, she also saw the knife under his direct control as he used it to rob her store as well. Finally, these instances were also recorded by the security cameras and played for the jury.

Recklessly endangering another person requires that a defendant consciously ignores a great and unjustifiable risk that what he is doing places or may place a victim in danger of death or serious bodily injury. In this case, the jury found that the Appellant did place both Ms. Bloomer and Ms. Menter in such danger. Once again, the evidence provided at trial was that the Appellant brandished a large knife and waived it at the victims in order to demand their compliance. Such behavior, with a very lethal object, can reasonably be considered a gross deviation from the standard of conduct that a reasonable person would have followed and sustain a conviction of recklessly endangering another person.

Moreover, this also provides the basis for the Appellant's conviction of simple assault. A defendant is guilty of simple assault if he intentionally places a victim in fear of imminent serious bodily injury through use of physical menace. The perpetrator caught on the security recordings and identified by Ms. Bloomer and Ms. Menter threatened both of them with a large knife which could certainly constitute physical

16

menace. The acts were also certainly intentional as the witnesses describe the Appellant gesturing with the knife in order to demand their money. A large knife would also be more than capable of inflicting serious bodily injury on a person and could reasonably create fear of an impairment of physical condition that would create a substantial risk of death, disfigurement or protracted loss.

Finally, all four of the Appellants convictions for conspiracy and solicitation to intimidate witnesses and conspiracy and solicitation to hinder apprehension are sustained by the same facts. Evidence was presented at the trial through recordings of the Appellant's phone calls made from the jail that Appellant collaborated with one Paul Bertino and asked him to speak to Damon Ficken about Mr. Ficken's statement to the police and recover a pair of sneakers from the Appellant's home. *Transcript of Trial of Ian Maute*, held on November 13, 2013, Exhibit 33, 34 and 35. The recordings also establish that Mr. Bertino then acted on these conversations by speaking to Mr. Ficken and scouring the Appellant's home for his sneakers. *Id.*

If the jury interpreted these recorded statements as true, which this Court will presume they did as the Commonwealth was the verdict winner, then it does not shock the conscience for the jury to have found the Appellant guilty on these counts. An agreement to both intimidate Mr. Ficken and conceal the sneakers was made between the Appellant and Mr. Bertino, who then took a substantial step to bring about each agreement. These actions were solicited from Mr. Bertino by the Appellant as Appellant was the one who proposed and formulated the plan according to the recorded phone conversations. This Court believes that such evidence adequately fulfills all of the criteria necessary to sustain the conviction for these four charges.

17

Ultimately, because of the clear testimony of two eye witnesses, the presence of two separate security camera records and the recorded phone conversations, this case revolved around an issue of identity. The actions of the perpetrator in assaulting and robbing both Smoker's Paradise and Karen's Flea Market were not largely in dispute since they had been caught on video. The question was whether it was the Appellant behind the mask committing these acts. Ms. Bloomer identified him on the stand as being the one responsible. Ms. Menter provided substantial evidence to indicate that the individual who robbed her store looked and acted the same as the one who robbed Smoker's Paradise. All the evidence presented provided a reasonable basis for the jury to find beyond a reasonable that that the perpetrator was the Appellant.

## III.   CONCLUSION

Accordingly, we respectfully request the Superior Court to affirm our Order of January 9 and January 22, 2014.

BY THE COURT:

HON. JOSEPH F. KAMEEN, P.J.

cc:   James Baron, Esq.
       Pike County District Attorney's Office

NV   CT. Adm

2014 APR 16 PM 1:56
ENTERED FOR RECORD
PIKE COUNTY, PA
OFFICE OF
PROTHONOTARY
CLERK OF COURTS

18